
SEALED

# UNITED STATES DISTRICT COURT
for the
Eastern District of California


FILED

MAR -1 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| In the Matter of the Search of<br><br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with<br>WHITEWITNESSMARKS@GMAIL.COM stored at<br>premises controlled by Google, Inc. | )<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>1: 17 SW  0 0 0 5 2  BAM |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated by reference. This court has authority to issue this warrant under 18 U.S.C. §§ 2703 (c)(1)(A) and 2711(3)(A).

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252A(a)(2)(A)<br>& (b)(1); 18 U.S.C. § 2252A(a)<br>(5)(B) and (b)(2) | receipt and distribution of, conspiracy to receive and distribute, and attempt to<br>receive and distribute child pornography; possession of, knowing access,<br>conspiracy to access, or attempted access with intent to view child pornography |

The application is based on these facts:
As set forth in the attached affidavit of Special Agent Erika Marin.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Erika Marin, Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3/1/17

_____
*Judge's signature*

City and state:  Fresno, CA
_____

Hon. Barbara A. McAuliffe
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTEN DISTRICT OF CALIFORNIA

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
WHITEWITNESSMARKS@GMAIL.COM
STORED AT PREMISES CONTROLLED BY
GOOGLE, INC.

Case No. _____

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Erika Marin, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with a certain account that is stored at premises controlled by Google,

Inc. ("Google"), an email provider headquartered at 1600 Amphitheater Parkway, Mountain

View, California, 94043.  The information to be searched is described in the following

paragraphs and in Attachment A.  This affidavit is made in support of an application for a search

warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to

disclose to the government copies of the information (including the content of communications)

further described in Section I of Attachment B.  Upon receipt of the information described in

Section I of Attachment B, government-authorized persons will review that information to locate

the items described in Section II of Attachment B.

2.      I am a Special Agent with the U.S. Department of Agriculture (USDA), Office of

Inspector General (OIG) – Investigations, Fresno, CA, and have been since June 2005.  As an

OIG Special Agent I am responsible for investigating individuals and business entities that have

allegedly violated federal criminal laws in connection with programs administered by USDA or

agencies within USDA, including employee misconduct investigations involving possession of

child pornography. I received a Bachelor of Science in Justice Studies from Arizona State University in May 2001. I am a graduate of the Federal Law Enforcement Training Center at Glynco, Georgia. As a Special Agent with the USDA-OIG, I have received training in the laws of search and seizure, and I have been the affiant for nine search warrants. During the course of my employment as a Special Agent, I have assisted in several investigations including the service of search warrants on digital devices. Throughout this investigation, I have also consulted with FBI Special Agent Greg Wenning, an FBI Special Agent since February 2013, who has special training and experience related to child pornography offenses. Specifically, Agent Wenning has investigated federal criminal violations related to child exploitation, and child pornography, during which he has executed and participated in the execution of numerous search and arrest warrants and seized evidence of violations of United States law. Agent Wenning has attended training classes and seminars concerning computer crimes, the sexual exploitation of children, and child pornography, and has had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media.

3.    This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.    The facts stated in this Affidavit are based on my personal knowledge, on information provided to me by other federal law enforcement agents, on written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents, including foreign law enforcement agencies as described below, on information gathered from the service of administrative subpoenas, and on independent investigation and analysis by FBI Agents or Analysts and computer forensic professionals.

2

5.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography), and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (possession of, knowing access, conspiracy to access, or attempted access with intent to view child pornography), have been committed by Chad M. LILLY.  There is also probable cause to search the information described in Attachment A for contraband, evidence, and instrumentalities, of these crimes further described in Attachment B.

## JURISDICTION

6.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## APPLICABLE LAW

7.     This investigation concerns alleged violations of Title 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) - Receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography; and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) - Possession of, knowing access, conspiracy to access, or attempted access with intent to view child pornography.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

8.     Through my experience and training, and that of other special agents who investigates cases involving child pornography, the following traits and characteristics are

3

generally found to exist and be true in cases involving individuals who collect child pornography:

a.   The majority of individuals who collect child pornography are persons who have a sexual attraction to children.  They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

b.   Many individuals who collect child pornography often seek out likeminded individuals, either in person or on the internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support.  This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior.  The different internet based vehicles used by such individuals to communicate with each other include, but are not limited to, websites, email, email groups, bulletin boards, internet chat programs, newsgroups, instant messaging, and other similar vehicles.

c.   Many individuals who collect child pornography often collect, read, copy or maintain names, addresses (including email addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the internet that they have similar sexual interests.  These contacts are maintained as a means of personal referral, exchange or commercial profit.  These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

d.   The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials, and may go to great lengths to conceal and

protect their collections from discovery, theft, and damage. Your affiant knows

from training, experience, and conversations with other special agents, that such

individuals have been known to maintain possession of their child pornography

for years, or even decades. They almost always maintain their collections in the

privacy and security of their homes or other secure locations.

9.     Your affiant believes the subject of this investigation to be a collector of child

pornography because, as further described herein, the subject has specifically visited websites

where known child pornography collectors go to obtain child pornography and the subject

personally viewed child pornography images on these sites even while he was aware his internet

activity was being logged and monitored by his government, law-enforcement employer.

## PROBABLE CAUSE

### Background Summary & Prior Warrants

10.     LILLY was a U.S. Forest Service Law Enforcement Officer from October 2012

through September 2016. LILLY resigned from the Forest Service as a result of this

investigation. During his time of employment, routine network monitoring of his government

network usage revealed that he downloaded child pornography to a government-owned laptop.

FBI Special Agent Greg Wenning applied for and obtained a warrant to search LILLY's

government laptop. That warrant was signed on June 3, 2016, by U.S. Magistrate Judge Erica P.

Grosjean, Case No. 16-SW-000131-EPG. That warrant application is attached hereto as

EXHIBIT 1 and its contents are incorporated by reference in support of the current application.

After executing the warrant, agents discovered child pornography on the government laptop.

11.     During an interview, LILLY admitted that he downloaded and viewed images of

nude children on the government laptop and a personally owned iPad, and that he connected

several external storage devices to the government laptop and may have saved images of nude children to those devices. Your affiant applied for and obtained a warrant to search LILLY's personal iPad. The warrant was signed on June 16, 2016, by U.S. Magistrate Judge Sheila K. Oberto, Case No. 16-SW-000154-EPG. That warrant application is attached hereto as EXHIBIT 2 and its contents are incorporated by reference in support of the current application. No additional child pornography was found on the iPad, but a consent search by law enforcement revealed that LILLY did save one image of child pornography to one external storage device located in his Forest Service office, and forensics showed that several of the external devices were likely connected to the government laptop after child pornography was downloaded and viewed on the Government Laptop.

12.     FBI Special Agent Wenning applied for and obtained seven warrants to search the external storage devices found in LILLY's office. Those warrants were signed on December 28, 2016, by U.S. Magistrate Judge Stanley A. Boone, Case No. 16-SW-000346-SAB. That warrant application is attached hereto as EXHIBIT 3 and its contents are incorporated by reference in support of the current application. After executing those search warrants, agents found child pornography on two of the devices, a gray PNY 512 MB thumb drive and a black SanDisk 16 GB SD card.

### The Gmail Account

13.     During LILLY's employment with the Forest Service, LILLY was assigned an email account under the user name clilly@fs.fed.us. Your affiant reviewed LILLY's incoming and outgoing emails from clilly@fs.fed.us, and discovered that LILLY created an account with the website Purenudism.com on January 22, 2016. LILLY subsequently forwarded the email from Purenudism.com confirming the account creation to "Whitewitnessmarks@gmail.com"

6

(hereinafter the GMAIL ACCOUNT). The following day, January 23, 2016, LILLY re-forwarded the same email from Purenudism.com to the GMAIL ACCOUNT.

14.     On February 8, 2016, LILLY received an email at clilly@fs.fed.us from Google confirming that the GMAIL ACCOUNT was used to sign in from Safari, an internet web browser, on his Forest Service issued iPhone. The message stated the following: "You are receiving this message because clilly@fs.fed.us is the recovery email for whitewitnessmarks@gmail.com."

15.     On June 14, 2016, your affiant and FBI Special Agent Greg Wenning interviewed LILLY at the Forest Service Supervisor's Office, 19777 Greenley Road, Sonora, California. LILLY was informed of his employee rights and he agreed to proceed with the interview. Among other topics, agents asked LILLY about the GMAIL ACCOUNT. LILLY admitted to using the GMAIL ACCOUNT to create an account with the website Purenudism.com. He also admitted to saving nude images of children to his GMAIL ACCOUNT so his wife would not find the images and he would be able to view the images later. LILLY stated the GMAIL ACCOUNT has since been deleted. The forensic review of LILLY's Government laptop revealed an email from Google on May 13, 2016, stating "This confirms that your Google Account whitewitnessmarks@gmail.com was deleted."

16.     On October 31, 2016, FBI SA Wenning served an Administrative Subpoena on Google, Inc., for information related to the GMAIL ACCOUNT. On January 9, 2017, Google confirmed that it was still in possession of account information associated with the GMAIL ACCOUNT. Specifically, Google stated that the account was created on August 13, 2014, was deleted on May 13, 2016, and that notwithstanding the user's deletion of the account, Google's servers maintained information associated with the account, including the following list of

7

Google services: Blogger, Gmail, Google Hangouts, Google Photos, Google+, Google Profile, Plusone, Web & App activity, YouTube.

## BACKGROUND CONCERNING EMAIL

17.     In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public.  Google allows subscribers to obtain email accounts at the domain name "gmail.com," like the email account listed in Attachment A.  Subscribers obtain an account by registering with Google.  During the registration process, Google asks subscribers to provide basic personal information.  In addition, emails sent, drafted, and received through a Google account may remain on Google's servers even after a user has deleted them. In light of Google's confirmation of its possession of account information for the account under investigation here, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

18.     Email messages and image files stored on a Google server by a subscriber may not necessarily also be located in the subscriber's home computer.  The subscriber may store email messages and/or other files on the Google server for which there is insufficient storage space in the subscriber's own computer or which the subscriber does not wish to maintain in his or her own computer.  A search of the subscriber's home, business, or laptop computer will therefore not necessarily uncover files the subscriber has stored on the Google servers.

8

19.     A Google subscriber can also access other Google services and store with Google files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google. As discussed above in Paragraph 16, Google has specifically confirmed that for the account at issue here, Google maintains information for the GMAIL ACCOUNT regarding the following Google services: Blogger, Gmail, Google Hangouts, Google Photos, Google+, Google Profile, Plusone, Web & App Activity, YouTube (collectively the "Google Services"). In my training and experience, information associated with the Google Services is likely to be evidence of the crimes under investigation, both as evidence of who was using GMAIL ACCOUNT, and also child pornography images/videos saved to Google Photos; web/app/Youtube search history showing access to websites and other information sources associated with child pornography; chats with child pornography enthusiasts/distributors; and posts or profile entries referencing an interest in child pornography.

20.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

21.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems.  This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account.

22.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

23.    This application seeks a warrant to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or

control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.[1]

24.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time.  Further, information maintained by the email provider can show how and when the account was accessed or used.  This geographic and timeline information may tend to either inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight

---

[1] It is possible that Google stores some portion of the information sought outside of the United States.  In <u>Microsoft Corp. v. United States</u>, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of Google. The government also seeks the disclosure of the physical location or locations where the information is stored.

into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## PRIOR EFFORTS TO OBTAIN EVIDENCE

25.     The government has not made any prior efforts to obtain evidence sought through the execution of this search warrant.

## CONCLUSION

26.     Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

ERIKA MARIN
Special Agent
USDA OIG

Approved as to form,

WILLIAM J. EDELMAN
Special Attorney to the U.S. Attorney General

Subscribed and sworn to before me on _____ 3/1 _____, 2017

HON. BARBARA A. MCAULIFFE
United States Magistrate Judge

12

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with whitewitnessmarks@gmail.com (hereinafter "the account") that is stored at premises owned, maintained, controlled, or operated by Google, Inc., a company headquartered at 1600 Amphitheater Parkway, Mountain View, California, 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information, including contents, images, videos, chats, search/access history and other records, associated with the account's use of the following Google services: Blogger, Gmail, Google Hangouts, Google Photos, Google+, Google Profile, Plusone, Web & App Activity, YouTube;

c.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

d.      The types of service utilized;

e.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

f.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

g.      For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), those violations involving Chad M. Lilly and occurring after May 1, 2014, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

> (a)  receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography;
>
> (b)  evidence indicating how and when whitewitnessmarks@gmail.com was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;
>
> (c)  the identity of the person(s) who created or used whitewitnessmarks@gmail.com, including records that help reveal their whereabouts;
>
> (d)  the identity of the person(s) who communicated with the person(s) who created or used whitewitnessmarks@gmail.com about matters relating to child pornography and/or sex with children, including records that help reveal their whereabouts; and
>
> (e)  All of the records and information described above in Section I(c).

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

ORIGINAL
FILED

JUN 03 2016

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Panasonic Toughbook Model CF-30KCPNQ2M laptop computer, serial number 0CKYA27688 | ) ) ) |

Case No.

**1:16 SW 0 0 0 1 3 1 EPG**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ Eastern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec.2252a(a)(2) | Receipt/Distribution of Child Pornography |
| 18 U.S.C. Sec.2252a(a)(5) | Possession of Child Pornography |

The application is based on these facts:

See Affidavit of Special Agent Greg Wenning, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Greg Wenning, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 3, 2016

*Judge's signature*

City and state: Fresno, California

Hon. Erica P. Grosjean United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Greg Wenning, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search a **Panasonic Toughbook Model CF-**

**30KCPNQ2M laptop computer, serial number 0CKYA27688** (hereinafter the "**SUBJECT**

**DEVICE**") further described in Attachment A, for the things described in Attachment B.

2.      I have been employed as a Special Agent of the Federal Bureau of Investigation

(FBI) since February 2013, and am currently assigned to the Sacramento Division, Stockton

Resident Agency.  While employed by the FBI, I have investigated federal criminal violations

related to child exploitation, and child pornography.  During the investigation of these cases, I

have executed and participated in the execution of numerous search and arrest warrants and

seized evidence of violations of United States law.  I have also attended training classes and

seminars concerning computer crimes and the sexual exploitation of children.  I have received

training in the area of child pornography and child exploitation, and have had the opportunity to

observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in

all forms of media including computer media.  Moreover, I am a federal law enforcement officer

who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251 and 2252A and I am

authorized by the Attorney General to request a search warrant.

3.      This affidavit is submitted in support of an application for a search warrant for contraband, evidence of a crime, fruits of a crime, and instrumentalities of violations of: Title 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography); 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (possession of, knowing access, conspiracy to access, or attempted access with intent to view child pornography).  As set forth below, I have probable cause to believe such items, as set forth in Attachment B, which is attached hereto and incorporated herein by this reference, are currently located within the **SUBJECT DEVICE**, which is a government-issued laptop assigned to **CHAD M. LILLY**, who works and resides in the County of Tuolumne in the Eastern District of California, more fully described in Attachment A, which is also attached hereto and incorporated herein by this reference.

4.      The statements contained in this affidavit are based in part on:  information provided by FBI Special Agents involved in this investigation; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by FBI and United States Department of Agriculture (USDA) agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent (SA) with the FBI.

5.      Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to

2

me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation and sufficient probable for the requested warrant.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.     The property to be searched is a Panasonic Toughbook Model CF-30KCPNQ2M laptop computer, serial number 0CKYA27688 (**SUBJECT DEVICE**). The **SUBJECT DEVICE** is a government-issued laptop assigned to **CHAD M. LILLY**, a Forest Service Law Enforcement Officer. The exact location of the **SUBJECT DEVICE** is currently unknown since the laptop is maintained in the possession of **LILLY** and may be located in one of the following places:

> a.  LILLY's office at the Stanislaus National Forest, Summit Ranger District, #1 Pinecrest Lake Rd., Pinecrest CA 95364
>
> b.  LILLY's residence at 20766 Haiapo Road, Mi Wuk Village, California, 95346
>
> c.  LILLY's government vehicle, a White Ford F-250 Truck, bearing CA A368348

7.     The applied-for warrant would authorize the search and forensic examination of the **SUBJECT DEVICE** for the purpose of identifying and seizing electronically stored data particularly described in Attachment B.

## APPLICABLE LAW

8.     This investigation concerns alleged violations of Title 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) - Receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography; and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) - Possession of, knowing access, conspiracy to access, or attempted access with intent to view child pornography (hereinafter the Specified Federal Offenses).

3

## TECHNICAL TERMS USED IN THIS AFFIDAVIT

9.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

c.    Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

10.    Through my experience and training, and that of other FBI Special Agents, the following traits and characteristics are generally found to exist and be true in cases involving

4

individuals who collect child pornography:

      a.      The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

      b.      Many individuals who collect child pornography often seek out likeminded individuals, either in person or on the internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different internet based vehicles used by such individuals to communicate with each other include, but are not limited to, websites, email, email groups, bulletin boards, internet chat programs, newsgroups, instant messaging, and other similar vehicles.

      c.      Many individuals who collect child pornography often collect, read, copy or maintain names, addresses (including email addresses), phone numbers, or lists of persons who have advertised or otherwise made known in publications and on the internet that they have similar sexual interests. These contacts are maintained as a means of personal referral, exchange or commercial profit. These names may be maintained in the original medium from which they were derived, in telephone books or notebooks, on computer storage devices, or merely on scraps of paper.

      d.      The majority of individuals who collect child pornography rarely, if ever, dispose of their sexually explicit materials and may go to great lengths to conceal and protect their collections from discovery, theft, and damage. Your Affiant knows from

5

training and experience that such individuals have been known to maintain possession of their child pornography for years, or even decades. They almost always maintain their collections in the privacy and security of their homes or other secure locations.

11.     Your affiant believes the subject of this investigation to be a collector of child pornography because, as further described herein, the subject has specifically visited web sites where known child pornography collectors go to obtain child pornography and the subject personally viewed child pornography images on these sites even while he was aware his internet activity was being logged and monitored.

## PROBABLE CAUSE

12.     The FBI and the United States Department of Agriculture, Office of Inspector General, Investigations (USDA-OIG) are conducting a joint investigation involving **CHAD M. LILLY** (hereinafter referred to as "**LILLY**"), Law Enforcement Officer, USDA Forest Service (FS), Stanislaus National Forest, Summit Ranger District, Tuolumne County, Pinecrest, CA, in connection with the Specified Federal Offenses.

13.     USDA-OIG SA ERIKA MARIN informed me that Forest Service employees are required to complete mandatory annual information security awareness training. This training states that "Any activity conducted on a government system can be monitored. Each time you log on to a government system, you consent to being monitored. You should use your computer for government business only. Avoid government computer misuse. Examples of computer misuse are: viewing or downloading pornography...".  SA MARIN advised that when FS employees log on to their assigned U.S. Government computer, they also receive and acknowledge the following warning: You are accessing a US Government information system, which includes (1) this computer, (2) this computer network, (3) all computers connected to this network, and (4) all

devices and storage media attached to this network or to a computer on this network. This information system is provided for U.S. Government–authorized use only. Unauthorized or improper use of this system may result in disciplinary action, as well as civil and criminal penalties. By using this information system, you understand and consent to the following: * You have no reasonable expectation of privacy regarding any communications or data transiting or stored on this information system. At any time, the government may for any lawful government purpose monitor, intercept, search and seize any communication or data transiting or stored on this information system. Any communications or data transiting or stored on this information system may be disclosed or used for any lawful government purpose, *your consent is final and irrevocable, you may not rely on any statements or informal policies purporting to provide you with any expectation of privacy regarding communications on this system, whether oral or written, by your supervisor or any other official, except USDA's Chief Information Officer., *FS Notification: Limited Personal use in accordance with the agreement negotiated by NFFE and the Forest Service is considered authorized access.

14.     On January 23, 2016, the USDA, Office of the Chief Information Officer (OCIO), Agriculture Security Operations Center (ASOC) notified USDA-OIG that while conducting network monitoring, they discovered that pornography was viewed from a Forest Service computer utilizing IP address 166.5.139.77.

15.     SA MARIN spoke with KEITH SKELDON, Enterprise Security Specialist, Forest Service, Chief Information Office, Cyber Security, who confirmed that a Forest Service asset named "AFSLTPAKYA27688" utilized IP address 166.5.139.77, and that IP address was assigned to "clilly", which is the Forest Service user account for **CHAD M. LILLY**. The Forest Service asset, which is also assigned to **LILLY** was identified as a Panasonic Toughbook Model

7

CF-30KCPNQ2MKCPNQ2M laptop computer, serial number 0CKYA27688 (**SUBJECT DEVICE**).

16.     The ASOC network monitoring scan determined that LILLY's IP Address was used to view images that appeared to be child pornography on January 22, 2016 from approximately 12:43 PM to 7:35 PM, Pacific Standard Time (PST). USDA ASOC logs showed that during this time frame, **LILLY** browsed websites including www.youngandnude.net, and www.nudist-young.com. Based on my training and experience and prior investigations, these are websites that individuals involved in the collecting and trading of child pornography often visit to view images of child erotica and images of children nude and often posing a sexual manner.

17.     SA MARIN provided a copy of the USDA ASOC log of internet activity for LILLY's IP Address for the above time frame to FBI Special Agent JOSH RATZLAFF. SA RATZLAFF was able to view the same websites and specific images that were accessed from LILLY's IP Address using the **SUBJECT DEVICE** and determined that **LILLY** viewed 75 images that included adult pornography, child erotica, and child pornography.

18.     SA RATZLAFF and SA MARIN viewed the following images which were accessed and viewed from LILLY's IP Address on the **SUBJECT DEVICE** which meet the definition for child pornography under Title 18 U.S.C. 2256:

a.     The **SUBJECT DEVICE** connected to the website "family-nudist.net" and the user viewed an image identified as */wp-content/uploads/2011/11/011-Cozy-Evening-Indoors.jpg*. This image contains a photo of three fully nude minor children, the youngest being a female engaged in an unnatural pose, suggesting coyness or a willingness to engage in sexual activity, intended to elicit a sexual response in the viewer.

b.        The **SUBJECT DEVICE** connected to the website "www.young18.biz" and the user viewed an image identified as */c/x1/dirty-public-nudity-legs-spread-on-297282_700_0.jpg*. The image depicts a female who appears to be a minor who is fully nude, with the focal point on the female's pubic area, engaged in a pose associated with sexual activity and suggests a willingness to engage in sexual activity.

c.        The **SUBJECT DEVICE** connected to the website "family-nudist.net" and the user viewed an image identified as */wp-content/uploads/2014/09/miscnud001.jpg* . This image contains a collage of nine photos of primarily minor nude female children; one photo depicting two young fully nude female children engaged in an unnatural, sexually suggestive pose. Another photo depicts two minor females posed in a manner that suggests a willingness to engage in sexual activity.

d.        The **SUBJECT DEVICE** connected to the website "publicnudism.net" and the user viewed an image titled */wp-content/uploads/2015/06/29/nudisum-sites-amateur-nudist-sex_318x201.jpg*. This image depicts two fully nude female children in sexually suggestive poses, with the photo cropped to make the females' genitalia the focal point of the photo.

19.        The following websites and images were also viewed by **LILLY** on January 22, 2016, which contain URL names that suggest the content may have been child pornography:

a.        www.world-beauty.org/photo/wp-content/uploads/2014/12/Pictures-of-Young-Nudists-Girls.jpg

b.        www.teeninpublic.info /wp-content/uploads/2015/05/30/free-young-nudists-pics-boys-and-girls-in-nudist-beaches-sex-videos.jpg

      c.      www.roggenstonesontheroad.com/crossing_canada/kids_swimming_nake

d_in_lake_superior.jpg

20.     Pursuant to **LILLY**'s employment with the Forest Service, his email traffic was

logged and copies of emails from LILLY's Forest Service email account were provided to SA

MARIN. On January 22, 2016, **LILLY** received an email at his Forest Service email account

confirming that he had created an account on the website www.Purenudism.com, which is

known to law enforcement to contain nude images of children.

21.     SA MARIN spoke with **LILLY's** Forest Service supervisor, who advised that the

Forest Service has never authorized or directed **LILLY** to access child pornography for any

work related assignment or in any official capacity and any access to this material by **LILLY**

would be for personal reasons.

22.     Based on my training, experience, and research, and from consulting the

manufacturer's advertisements and product technical specifications available online at

http://business.Panasonic.com, I know that the **SUBJECT DEVICE** has capabilities that allow it

to access the internet, for the purpose of downloading data and sending and receiving email

through web based email providers. In my training and experience, examining data stored on

devices of this type can uncover, among other things, evidence that reveals or suggests who

possessed or used the device, when it was used, what other devices were connected and what

type of online activity was conducted using the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic

DEVICEs can store information for long periods of time. Similarly, things that have been

10

viewed via the Internet are typically stored for some period of time on the DEVICE. This information can sometimes be recovered with forensics tools.

24.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICE because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a DEVICE can also indicate who has used or controlled the DEVICE. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic DEVICE works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic DEVICEs were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is

11

evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a DEVICE was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **SUBJECT DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

## SEARCH AND SEIZURE OF COMPUTER/ELECTRONIC/DIGITAL DATA

26. This application seeks permission to access, search for, and seize evidence and contraband of the crime described above stored on the **SUBJECT DEVICE**, which is capable of connecting to the internet and storing evidence of the crime.

27. I have spoken with FBI Special Agent Scott Medlin who has training in the forensic examination of computers and digital devices. SA Medlin is a certified FBI Computer Analysis Response Team member and has many years of investigative experience in computer-related crimes, including the possession of child pornography. SA Medlin related information to

12

me and/or confirmed information for me as noted below.

28.     Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including SA Medlin, I know that computers and digital devices are often used to store information, very much the same way paper, ledgers, files and file cabinets are used to store information. I know that it is common today for businesses to utilize computers to conduct their business and to store information related thereto. I also know that it is common for individuals to have personal computers and to use these computers to conduct their personal affairs, their business affairs, and to store information related thereto. I know based on my training and experience, including prior investigations specifically related to the investigation of the possession of child pornography, that subjects who are engaged in the possession of child pornography commonly store information related to their activities on computers and digital devices.

## REMOVAL OF DATA STORAGE DEVICES FOR REVIEW IN A LABORATORY SETTING MAY BE REQUIRED

29.     Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including SA Medlin, I know that a forensic image is an exact physical copy of a data storage device. A forensic image captures all data on the subject media without viewing or changing the data in any way. Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of data for information subject to seizure pursuant to the warrant. I also know that during the search of the Device it is not always possible to create a forensic image of or search digital devices or media for data. I also know that it is frequently necessary to remove

13

digital devices or media for later laboratory evaluation off-site under controlled circumstances. This is true for a number of reasons, including the following:

a. Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment. Because there are so many different types of digital devices and software in use today, it is difficult to anticipate all of the necessary technical manuals, specialized equipment, and specific expertise necessary to conduct a thorough search of the media to ensure that the data will be preserved and evaluated in a useful manner.

b. Searching digital devices can require the use of precise, scientific procedures designed to maintain the integrity of the evidence. The recovery of such data may require the use of special software and procedures, such as those used in a law enforcement laboratory.

c. The volume of data stored on many digital devices is typically so large that it will be highly impractical to search for data during the execution of the physical search of the Device. Storage devices capable of storing 1000 gigabytes of data are now commonplace in desktop computers. It can take several hours, or even days, to image a single hard drive. The larger the drive, the longer it takes. Depending upon the number and size of the devices, the length of time that agents must remain onsite to image and examine digital devices can become impractical.

d. Since digital data may be vulnerable to inadvertent modification or destruction, a controlled environment, such as a law enforcement laboratory, may be essential to conduct a complete and accurate analysis of the digital devices from which the data will be extracted. Software used in a laboratory setting can often reveal the true

14

nature of data. Moreover, a computer forensic reviewer needs a substantial amount of time to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or an instrumentality of a crime.

 e. Analyzing the contents of a computer or other electronic storage device, even without significant technical difficulties, can be very challenging, and a variety of search and analytical methods must be used. For example, searching by keywords, which is a limited text-based search, often yields thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue which may not be searchable text, such as: who created it; when and how it was created, downloaded, or copied; when it was last accessed; when it was last modified; when it was last printed; and when it was deleted. The relevance of this kind of data is often contextual. Furthermore, many common email, database, and spreadsheet applications do not store data as searchable text, thereby necessitating additional search procedures. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed data requires a search of events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which users logged in, whether users shared passwords, whether a computer was connected to other computers or networks, and whether the users accessed or used other programs or services in the relevant time period, can help determine who was sitting at the keyboard

 f. Searching digital devices can require the use of precise, scientific procedures designed to recover latent data. The recovery of such data may require the

15

use of special software and procedures. Data that represents electronic files or remnants of such files can be recovered months or even years after it has been downloaded onto a hard drive, deleted, or viewed via the Internet. Even when such files have been deleted, data can be recovered months or years later using readily available forensic tools. Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in space on the hard drive or other storage media that is not allocated to an active file. In addition, a computer's operating system may keep a record of deleted data in a swap or recovery file or in a program specifically designed to restore the computer's settings in the event of a system failure.

30.     This warrant seeks authority to seize contextual data, that is, evidence of how a digital device has been used, what it has been used for and who has used it. It can be very important in criminal cases to seek "attribution" data so that an event or communication can be associated with a person. Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including SA Scott Medlin this authority is sought for a number of reasons:

        a.     In some instances, the computer "writes" to storage media without the specific knowledge or permission of the user. Generally, data or files that have been received via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve artifacts of electronic

16

activity from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer usage. Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question. Given the interrelationships of the data to various parts of the computer's operation, this information cannot be easily segregated.

b.      Digital data on the hard drive that is not currently associated with any file may reveal evidence of a file that was once on the hard drive but has since been deleted or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, email programs, and chat programs store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations (or on other devices).

c.      Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device. Specifically, the lack of computer security software, virus protection,

17

malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of the items sought by this application. Additionally, since computer drives may store artifacts from the installation of software that is no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timelines of usage, confirming the identification of certain users, establishing a point of reference for usage and, in some cases, assisting in the identification of certain users. This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations.    Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

## SEARCH PROCEDURE

31.    In searching for data capable of being read, stored, or interpreted by a computer or storage device, law enforcement personnel executing the search warrant will employ the following procedure:

a.    *On-site search, if practicable.* Law enforcement officers trained in computer forensics (hereafter, "computer personnel"), if present, may be able to determine if digital devices can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve data on the devices and conduct such a search if deemed practicable. Any device searched on-site will be seized if it contains any data falling within the list of items to be seized as set forth in the warrant and in Attachment B.

18

b. *On-site imaging, if practicable.* If a digital device cannot be searched on-site as described above, the computer personnel, if present, will determine whether the device can be imaged on-site in a reasonable amount of time without jeopardizing the ability to preserve the data and conduct such imaging if deemed practicable.

c. *Seizure of digital devices for off-site imaging and search.* If no computer personnel are present at the execution of the search warrant, or if they determine that a digital device cannot be searched or imaged on-site in a reasonable amount of time and without jeopardizing the ability to preserve data, the digital device will be seized and transported to an appropriate law enforcement laboratory for review.

d. Law enforcement personnel (including, but not limited to, computer personnel) will examine the digital device to determine if it contains any data that falls within the list of items to be seized as set forth in the warrant and in Attachment B.

e. Law enforcement personnel will use procedures designed to identify items to be seized under the warrant. These procedures may include, without limitation, the use of a "hash value" library to exclude normal operating system files that do not need to be searched. In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

## RETENTION OF IMAGE

32. The government will retain a forensic image of each digital device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at a trial; responding to any potential questions regarding the corruption of data; establishing the chain of custody of data; refuting any potential claims of fabrication, tampering, or destruction

19

with/of data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

33. Chris Boehm, Acting Deputy Director, Forest Service, Law Enforcement and Investigations Office, authorized the USDA-OIG and FBI to retain the **SUBJECT DEVICE** until the investigation is complete. If it is determined that no contraband or evidence is found on the **SUBJECT DEVICE**, the **SUBJECT DEVICE** will be returned to the Forest Service.

34. I am aware that 18 U.S.C. § 3509(m)(1) requires that "any property or material that constitutes child pornography . . . shall remain in the care, custody, and control or either the Government or the Court."

## INVENTORY AND RETURN

35. The search warrant return to the Court will describe the physical storage media that were seized or imaged.

## PRIOR EFFORTS TO OBTAIN EVIDENCE

36. The government has not made any prior efforts to obtain evidence sought through the execution of this search warrant.

## REQUEST FOR DELAYED NOTIFICATION

37. Pursuant to 18 U.S.C. §§ 3103a(b) and 2705(a)(2), I request that notice to LILLY be delayed for no more than thirty (30) days. As explained further in paragraph 10, above, it is typical of collectors of child pornography to keep images of child pornography for lengthy amounts of time. Thus, LILLY may well be maintaining such images on computers located elsewhere, such as his home. If LILLY is informed of this warrant upon its execution, there is

20

reason to believe he would destroy or tamper with such images to prevent their retrieval by law enforcement. Based on my conversations with SA MARIN, I believe that the search warrant can be executed in a manner that does not provide notice to LILLY. I therefore request delayed notification in order to prevent potential destruction or tampering with evidence.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

21

## CONCLUSION

38.     Based on the foregoing, there is probable cause to believe that the federal criminal

statutes cited herein have been violated, and that the contraband, property, evidence, fruits and

instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are

located on the **SUBJECT DEVICE**, further described in Attachment A. I respectfully request

that this Court issue a search warrant for the **SUBJECT DEVICE**, authorizing the seizure and

search of the items described in Attachment B.

Respectfully submitted,

Greg Wenning
Special Agent
Federal Bureau of Investigation

Sworn to me this _3_ day of June, 2016

Honorable Erica P. Grosjean
United States Magistrate Judge

Approved as to form,

Michael G. Tierney
Assistant United States Attorney

22

## ATTACHMENT A

### DESCRIPTION OF DEVICE TO BE SEARCHED

The **SUBJECT DEVICE** to be searched is a silver and black Panasonic Toughbook Model CF-30KCPNQ2M laptop computer, serial number 0CKYA27688. The **SUBJECT DEVICE** is a government-issued laptop currently assigned to **CHAD M. LILLY**, who works and resides in Tuolumne County, California and may have the **SUBJECT DEVICE** in his possession on his person, at his office in Pinecrest, CA, in his home in Mi Wuk Village, California, or in his government-owned Ford F-250 truck.

This warrant also includes the search of any electronic storage device, including thumb drives, flash drives, SD cards, DVD/CDs, phones, MP3 players, external hard drives, digital cameras and any other media capable of storing data that is either physically or wirelessly connected to the **SUBJECT DEVICE** at the time the warrant is executed.

This warrant authorizes the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying and seizing the electronically stored information fully described in Attachment B.

END OF ATTACHMENT "A"

## ATTACHMENT B

### INFORMATION TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of the Specified Federal Offenses defined in Title 18, U.S.C., § 2252A:

1. Any child pornography, or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18 U.S.C. § 2256 and child erotica, in any format (including deleted files, emails, digital still and video files).

2. Any items, images, documents, communications, records, and information pertaining to the possession, receipt, transmission, sale, purchase, trade, or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct that affected or were transmitted or received via computer or some other facility or means of interstate or foreign commerce including:

   a. records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind affecting interstate or foreign commerce or involving the transmission via interstate or foreign commerce, including by U.S. mail or by computer, of any child pornography or visual depiction of minors engaged in sexually explicit conduct;

   b. credit card information, including bills and payment information, regarding: purchase of or payment for memberships to web sites; and possession, receipt, sale, purchase, trade, transportation, or distribution of child pornography or visual depictions of

2

minors engaged in sexually explicit conduct; and

c. records, information, and items relating to violations of the statutes described above including, records and information relating to sexual exploitation of children, including emails, chats, file sharing or other communications by any user of the device to communicate with other individuals for the purpose of obtaining, distributing or trading child pornography.

3. Any storage media connected to the SUBJECT DEVICE used as a means to commit the violations described above.

4. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under

3

investigation and to the computer user;

e.  evidence of all wireless networks, or telecommunication carrier services used to access the internet, and the dates and times of access;

f.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

g.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

h.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

i.  evidence of the times the COMPUTER was used;

j.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

k.  records of or information about Internet Protocol addresses used by the COMPUTER;

l.  evidence identifying the website or other location from which images of child pornography were downloaded, including date and time of such downloads;

m.  evidence identifying whether image and/or video files containing child pornography were ever viewed, including date and time of such viewing;

n.  evidence identifying whether images and/or videos files were deleted, including date and time of deletion;

o.  evidence relevant to the creation dates of all visual depictions of minors engaged in sexually explicit conduct, including evidence derived from metadata obtained from child pornographic videos and images;

4

p.  records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

q.  contextual information necessary to understand the evidence described in this attachment.

**Definition of Terms**

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

**SEARCH PROCEDURE**

1.    In searching for data capable of being read, stored, or interpreted by a computer or

5

storage device, law enforcement personnel executing the search warrant will employ the following procedure:

    a.    *On-site search, if practicable.* Law enforcement officers trained in computer forensics (hereafter, "computer personnel"), if present, may be able to determine if digital devices can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve data on the devices and conduct such a search if deemed practicable. Any device searched on-site will be seized if it contains any data falling within the list of items to be seized as set forth in the warrant and in Attachment B.

    b.    *On-site imaging, if practicable.* If a digital device cannot be searched on-site as described above, the computer personnel, if present, will determine whether the device can be imaged on-site in a reasonable amount of time without jeopardizing the ability to preserve the data and conduct such imaging if deemed practicable.

    c.    *Seizure of digital devices for off-site imaging and search.* If no computer personnel are present at the execution of the search warrant, or if they determine that a digital device cannot be searched or imaged on-site in a reasonable amount of time and without jeopardizing the ability to preserve data, the digital device will be seized and transported to an appropriate law enforcement laboratory for review.

    d.    Law enforcement personnel (including, but not limited to, computer personnel) will examine the digital device to determine if it contains any data that falls within the list of items to be seized as set forth in the warrant and in Attachment B.

    e.    Law enforcement personnel will use procedures designed to identify items

6

to be seized under the warrant. These procedures may include, without limitation, the use of a "hash value" library to exclude normal operating system files that do not need to be searched. In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

## RETENTION OF IMAGE

2. The government will retain a forensic image of each digital device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at a trial; responding to any potential questions regarding the corruption of data; establishing the chain of custody of data; refuting any potential claims of fabrication, tampering, or destruction with/of data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**END OF ATTACHMENT "B"**

7

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

ORIGINAL
FILED

JUN 1 6 2016

CLERK, U. S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Apple iPad Mini, model number MD528LL/A, serial
number F4PKGH5ZF193

Case No.

1: 16 SW 0 0 0 7 5 4    EPG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec.2252A(a)(2) | Receipt and Distribution of child pornography |
| 18 U.S.C. Sec. 2252A(a)(5) | Possession of Child Pornography |

The application is based on these facts:

See Affidavit of Special Agent Erika Marin, attached hereto and incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Erika Marin, Special Agent, USDA-OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 16, 2016

*Judge's signature*

City and state: Fresno, California

Hon. Sheila K. Oberto, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Erika Marin, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search an **Apple iPad Mini, model number**

**MD528LL/A, serial number F4PKGH5ZF193** (hereinafter the **"SUBJECT DEVICE"**)

further described in Attachment A, for the things described in Attachment B.

2.     I am a Special Agent with the U.S. Department of Agriculture (USDA), Office of

Inspector General (OIG) -- Investigations, Fresno, CA, and have been so employed since June

2005. As an OIG Special Agent I am responsible for investigating individuals and business

entities that have allegedly violated federal criminal laws in connection with programs

administered by USDA or agencies within USDA, including employee misconduct

investigations involving possession of child pornography. I received a Bachelor of Science in

Justice Studies from Arizona State University in May 2001. I am a graduate of the Federal Law

Enforcement Training Center at Glynco, Georgia. As a Special Agent with the USDA-OIG, I

have received training in the laws of search and seizure, and I have been the affiant for nine

search warrants. During the course of my employment as a Special Agent, I have assisted in

several investigations including the service of search warrants on digital devices. Throughout

this investigation, I have also consulted with FBI Special Agent Greg Wenning, who has special training and experience related to child pornography offenses.

3.      I make this affidavit based on personal knowledge gathered during my participation in this investigation, and my training and experience as a USDA-OIG Special Agent. During this investigation, I have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. 2256) in all forms of media including computer media. I have interviewed the subject of this investigation, reviewed numerous emails, records, and other evidence, and spoke to and consulted with other agents and/or representatives from law enforcement who investigate crimes involving possession of child pornography. I obtained facts presented in this affidavit from these sources. As this affidavit is being submitted for the limited purpose of seeking authorization for a warrant to search the device described herein, I have not set forth every fact learned during the course of the investigation. Facts not set forth herein are not being relied upon in reaching my conclusion that warrant should be issued.

4.      This affidavit is submitted in support of an application for a search warrant for contraband, evidence of a crime, fruits of a crime, and instrumentalities of violations of: Title 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography); 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (possession of, knowing access, conspiracy to access, or attempted access with intent to view child pornography). As set forth below, I have probable cause to believe such items, as set forth in Attachment B, which is attached hereto and incorporated herein by this reference, are currently located within the **SUBJECT DEVICE**, which is a personal tablet owned by **CHAD**

2

**M. LILLY (LILLY)** and **KEIALOHA AIKO LILLY (K. LILLY)**, husband and wife, who reside in the County of Tuolumne in the Eastern District of California, more fully described in Attachment A, which is also attached hereto and incorporated herein by this reference.

5.      The statements contained in this affidavit are based in part on: information provided by FBI Special Agents involved in this investigation; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by FBI and USDA agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent (SA) with the USDA-OIG.

6.      Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation and sufficient probable for the requested warrant.

7.      This search warrant application is part of an investigation into child pornography downloaded by **LILLY**. SA Wenning applied for a warrant to search **LILLY**'s government-issued laptop; this warrant was authorized on June 3, 2016 by United States Magistrate Judge Erica P. Grosjean, Case No. 16-sw-000131-EPG. This current application incorporates the information set forth in SA Wenning's application (the "Government Laptop Affidavit"), which is annexed hereto as Enclosure 1 and incorporated by reference as if fully set forth herein.

3

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.      The property to be searched is an Apple iPad Mini, serial number

F4PKGH5ZF193 (**SUBJECT DEVICE**). The **SUBJECT DEVICE** is a personal tablet

computer owned by **CHAD M. LILLY** (hereinafter referred to as "**LILLY**"), and **KEIALOHA**

**AIKO LILLY** (hereinafter referred to as "**K. LILLY**"), husband and wife. The location of the

**SUBJECT DEVICE** is in the custody of Special Agent Scott Medlin, FBI, 3720 Dudley Blvd.,

McClellan, California. The **SUBJECT DEVICE** was seized by FBI agents on June 14, 2016 at

the residence of **LILLY** and **K. LILLY,** 20766 Haiapo Road, Mi-Wok Village, California,

95346.

9.      The applied-for warrant would authorize the search and forensic examination of

the **SUBJECT DEVICE** for the purpose of identifying and seizing electronically stored data

particularly described in Attachment B.

## PROBABLE CAUSE

### Summary

10.     **LILLY** is a U.S. Forest Service Law Enforcement Officer. Routine network

monitoring of his government network usage revealed that he downloaded child pornography to

a government-owned laptop. During an interview, **LILLY** admitted that he downloaded and

viewed child pornography on the **SUBJECT DEVICE**, which he owns jointly with his wife.

### Identification of Government Laptop Computer Used to Access Child Pornography

11.     On January 23, 2016, the USDA, Office of the Chief Information Officer (OCIO),

4

Agriculture Security Operations Center (ASOC) notified USDA-OIG that while conducting network monitoring, they discovered that pornography was viewed from a Forest Service computer utilizing IP address 166.5.139.77 and assigned to **LILLY**.

12.   As is more fully set forth in the Government Laptop Affidavit, I and members of the FBI continued investigating this matter. I, along with FBI SP Josh Ratzlaff, reviewed several images that ASOC identified as being downloaded to **LILLY**'s government laptop and confirmed that they met the definition for child pornography under Title 18 U.S.C. 2256. The depicted minor females posed in unnatural and sexually suggestive poses.

13.   I spoke with **LILLY's** Forest Service supervisor, who advised that the Forest Service has never authorized or directed **LILLY** to access child pornography for any work related assignment or in any official capacity and any access to this material by **LILLY** would be for personal reasons.

### Search Warrant and Forensic Exam on the Government Laptop

14.   On June 2, 2016, the Hon. Erica P. Grosjean, U.S. Magistrate Judge, authorized a Federal Search and Seizure Warrant issued under case no. 1:16SW000131EPG (under seal), to search the Government Laptop and seize evidence related to the receipt and possession of child pornography.

15.   On June 14, 2016, pursuant to the above Federal Search and Seizure Warrant, Special Agents from the USDA OIG and FBI obtained the Government Laptop from **LILLY's** supervisor H.R., who personally received the laptop from **LILLY** that morning at the U.S. Forest Service office in Sonora, CA.

16.     When agents received the laptop it was powered off and required Forest Service administrator password access.  Forest Service information technology personnel assisted FBI Digital Forensic Examiner (DFE) SA Scott Medlin by unlocking the computer.  DFE SA Medlin then used forensic software to conduct a forensic examination of the Government Laptop and located the following information on the laptop:

a.      At least 100 images of child erotica consistent with the images previously downloaded from Purenudism.com were located on the Government Laptop, including the following images of child pornography, which were stored in the temporary internet files and were viewed on the Government Laptop:

    i.   File Name – 154x166_27PKNS8NN.jpg – This image is a juvenile female lying on her back, with her genitals displayed as the focus of the photo.

    ii.  File name – 154x166_2NPQ578Z7.jpg – This image is of a nude adult female, and a juvenile female standing nude, posed in a sexual manner with her genitals displayed.

    iii. File name – 154x156_2[5].jpg – This image is of a juvenile female, nude, dancing and posed in a sexual manner with her genitals displayed.

    iv.  File name – 154x166-3[9].jpg – This image is of a juvenile female, nude, standing with her legs slightly spread and her genitals displayed. The photo is shot from below the female to make the female's genitals the focus of the photo.

6

v.  File name – 154x166_2[10].jpg – This image is of two juvenile females nude with only boots on, standing in the snow. One female is posed facing the camera with her legs slightly spread to display her genitals.

b.  The Government Laptop connected to Purenudism.com several hundred times between approximately May 18, 2016 and May 23, 2016. Purenudism.com is a website which is known to law enforcement to contain nude images of children, child erotica or child pornography.

## Interview of Lilly

17.  On June 15, 2016, your affiant and FBI SA Wenning interviewed **LILLY**, at the Forest Service Supervisor's Office, 19777 Greenley Road, Sonora, California. I informed **LILLY** of his employee rights and he agreed to proceed with the interview. During the interview, **LILLY** admitted that he viewed various websites and images containing nude photos of women and children, particularly from the website purenudism.com, on three to four occasions from his Government laptop. **LILLY** further stated that he viewed and downloaded images on the **SUBJECT DEVICE** from his residence on at least six occasions and has viewed and downloaded images containing nude photos of children for several years. **LILLY** stated that any images that were downloaded to **SUBJECT DEVICE** have since been deleted from the device. **LILLY** authorized consent for agents to search the **SUBJECT DEVICE**, however his spouse, **K. LILLY**, who also has ownership of **SUBJECT DEVICE**, refused consent to search.

18.  In order to prevent the destruction of any electronic evidence, and with the previously consent of **LILLY**, the **SUBJECT DEVICE** was seized by law enforcement

7

overnight. **K. LILLY** was asked for consent to seize the device, but refused such consent. It has not been searched.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

20.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

  a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

  c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **SUBJECT DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

9

## SEARCH AND SEIZURE OF COMPUTER/ELECTRONIC/DIGITAL DATA

22.     This application seeks permission to access, search for, and seize evidence and contraband of the crime described above stored on the **SUBJECT DEVICE**, which is capable of connecting to the internet and storing evidence of the crime.

23.     I have spoken with FBI Special Agent Medlin who has training in the forensic examination of computers and digital devices. SA Medlin is a certified FBI Computer Analysis Response Team member and has many years of investigative experience in computer-related crimes, including the possession of child pornography. SA Medlin related information to me and/or confirmed information for me as noted below.

24.     Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including SA Medlin, I know that computers and digital devices are often used to store information, very much the same way paper, ledgers, files and file cabinets are used to store information. I know that it is common today for businesses to utilize computers to conduct their business and to store information related thereto. I also know that it is common for individuals to have personal computers and to use these computers to conduct their personal affairs, their business affairs, and to store information related thereto. I know based on my training and experience, including prior investigations specifically related to the investigation of the possession of child pornography, that subjects who are engaged in the possession of child pornography commonly store information related to their activities on computers and digital devices.

10

## REMOVAL OF DATA STORAGE DEVICES FOR REVIEW IN A LABORATORY

## SETTING MAY BE REQUIRED

25.     Based upon my training and experience, and information related to me by agents

and others involved in the forensic examination of computers and digital devices including SA

Medlin, I know that a forensic image is an exact physical copy of a data storage device. A

forensic image captures all data on the subject media without viewing or changing the data in

any way. Absent unusual circumstances, it is essential that a forensic image be obtained prior to

conducting any search of data for information subject to seizure pursuant to the warrant. I also

know that during the search of the Device it is not always possible to create a forensic image of

or search digital devices or media for data. I also know that it is frequently necessary to remove

digital devices or media for later laboratory evaluation off-site under controlled circumstances.

This is true for a number of reasons, including the following:

a.     Searching digital devices can be a highly technical process that requires

specific expertise and specialized equipment. Because there are so many different types

of digital devices and software in use today, it is difficult to anticipate all of the necessary

technical manuals, specialized equipment, and specific expertise necessary to conduct a

thorough search of the media to ensure that the data will be preserved and evaluated in a

useful manner.

b.     Searching digital devices can require the use of precise, scientific

procedures designed to maintain the integrity of the evidence. The recovery of such data

may require the use of special software and procedures, such as those used in a law

enforcement laboratory.

11

c.      The volume of data stored on many digital devices is typically so large that it will be highly impractical to search for data during the execution of the physical search of the Device. Storage devices capable of storing 1000 gigabytes of data are now commonplace in desktop computers. It can take several hours, or even days, to image a single hard drive. The larger the drive, the longer it takes. Depending upon the number and size of the devices, the length of time that agents must remain onsite to image and examine digital devices can become impractical.

d.      Since digital data may be vulnerable to inadvertent modification or destruction, a controlled environment, such as a law enforcement laboratory, may be essential to conduct a complete and accurate analysis of the digital devices from which the data will be extracted. Software used in a laboratory setting can often reveal the true nature of data. Moreover, a computer forensic reviewer needs a substantial amount of time to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or an instrumentality of a crime.

e.      Analyzing the contents of a computer or other electronic storage device, even without significant technical difficulties, can be very challenging, and a variety of search and analytical methods must be used. For example, searching by keywords, which is a limited text-based search, often yields thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue which may not be searchable text, such as: who created it; when and how it was created, downloaded, or

12

copied; when it was last accessed; when it was last modified; when it was last printed;

and when it was deleted. The relevance of this kind of data is often contextual.

Furthermore, many common email, database, and spreadsheet applications do not store

data as searchable text, thereby necessitating additional search procedures. To determine

who created, modified, copied, downloaded, transferred, communicated about, deleted, or

printed data requires a search of events that occurred on the computer in the time periods

surrounding activity regarding the relevant data. Information about which users logged

in, whether users shared passwords, whether a computer was connected to other

computers or networks, and whether the users accessed or used other programs or

services in the relevant time period, can help determine who was sitting at the keyboard

      f.      Searching digital devices can require the use of precise, scientific

procedures designed to recover latent data. The recovery of such data may require the

use of special software and procedures. Data that represents electronic files or remnants

of such files can be recovered months or even years after it has been downloaded onto a

hard drive, deleted, or viewed via the Internet. Even when such files have been deleted,

data can be recovered months or years later using readily available forensic tools.

Normally, when a person deletes a file on a computer, the data contained in the file does

not actually disappear; rather, that data remains on the hard drive until it is overwritten by

new data. Therefore, deleted files, or remnants of deleted files, may reside in space on

the hard drive or other storage media that is not allocated to an active file. In addition, a

computer's operating system may keep a record of deleted data in a swap or recovery file

or in a program specifically designed to restore the computer's settings in the event of a

system failure.

26.     This warrant seeks authority to seize contextual data, that is, evidence of how a digital device has been used, what it has been used for and who has used it. It can be very important in criminal cases to seek "attribution" data so that an event or communication can be associated with a person. Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including SA Medlin this authority is sought for a number of reasons:

        a.      In some instances, the computer "writes" to storage media without the specific knowledge or permission of the user. Generally, data or files that have been received via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve artifacts of electronic activity from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer usage. Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question. Given the interrelationships of the data to various parts of the computer's operation, this information cannot be easily segregated.

        b.      Digital data on the hard drive that is not currently associated with any file may reveal evidence of a file that was once on the hard drive but has since been deleted

14

or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, email programs, and chat programs store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations (or on other devices).

     c.     Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of the items sought by this application. Additionally, since computer drives may store artifacts from the installation of software that is no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timelines of usage, confirming the identification of certain users, establishing a point of reference for usage and, in some cases, assisting in the identification of certain users. This data can be

15

evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations.   Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

## SEARCH PROCEDURE

27.     In searching for data capable of being read, stored, or interpreted by a computer or storage device, law enforcement personnel executing the search warrant will employ the following procedure:

a.     Law enforcement personnel (including, but not limited to, computer personnel) will examine the digital device to determine if it contains any data that falls within the list of items to be seized as set forth in the warrant and in Attachment B.

b.     Law enforcement personnel will use procedures designed to identify items to be seized under the warrant.   These procedures may include, without limitation, the use of a "hash value" library to exclude normal operating system files that do not need to be searched.   In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

## RETENTION OF IMAGE

28.     The government will retain a forensic image of each digital device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at a trial; responding to any potential questions regarding the corruption of data; establishing the

16

chain of custody of data; refuting any potential claims of fabrication, tampering, or destruction with/of data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

29.     I am aware that 18 U.S.C. § 3509(m)(1) requires that "any property or material that constitutes child pornography...shall remain in the care, custody and control of either the Government or the Court."

30.     Because of the nature of child pornography investigations, and the fact that collectors of child pornography often delete child pornography images in an attempt to conceal their activity, a thorough laboratory review of any seized digital items will be required to ensure that child pornography does not exist on the devices. Because of this, on-site imaging and return of devices is not feasible because law enforcement would risk leaving devices containing child pornography with non-government individuals for whom it is illegal to possess this material. The government will return any seized items within fourteen (14) business days unless, under the law, the government may retain it for use as evidence or it is contraband or a forfeitable instrumentality or fruit of a crime, or unless such date is further extended by the Court.

## INVENTORY AND RETURN

31.     The search warrant return to the Court will describe the physical storage media that were seized or imaged.

## PRIOR EFFORTS TO OBTAIN EVIDENCE

32.     The government has not made any prior efforts to obtain evidence sought through

17

the execution of this search warrant.

## CONCLUSION

33.     Based on the foregoing, there is probable cause to believe that the federal criminal

statutes cited herein have been violated, and that the contraband, property, evidence, fruits and

instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are

located on the **SUBJECT DEVICE**, further described in Attachment A.  I respectfully request

that this Court issue a search warrant for the **SUBJECT DEVICE**, authorizing the seizure and

search of the items described in Attachment B.

Respectfully submitted,

Erika Marin
Special Agent
USDA-OIG

Sworn to me this _16_ day of June, 2016

Honorable Sheila K. Oberto
United States Magistrate Judge

Approved as to form.

Michael G. Tierney
Assistant United States Attorney

18

## ATTACHMENT A

### DESCRIPTION OF DEVICE TO BE SEARCHED

The **SUBJECT DEVICE** to be searched is a black **Apple iPad Mini, model number MD528LL/A, serial number F4PKGH5ZF193**. The **SUBJECT DEVICE** is a personal tablet computer owned by **CHAD M. LILLY** and **KEIALOHA AIKO LILLY**, husband and wife, who reside at 20766 Haiapo Road, Mi-Wok Village, California, and had the **SUBJECT DEVICE** in his possession during the time of seizure by FBI agents.

This warrant authorizes the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying and seizing the electronically stored information fully described in Attachment B.



END OF ATTACHMENT "A"

### ATTACHMENT B

### INFORMATION TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of the Specified Federal Offenses defined in Title 18, U.S.C., § 2252A:

1. Any child pornography, or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18 U.S.C. § 2256 and child erotica, in any format (including deleted files, emails, digital still and video files).

2. Any items, images, documents, communications, records, and information pertaining to the possession, receipt, transmission, sale, purchase, trade, or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct that affected or were transmitted or received via computer or some other facility or means of interstate or foreign commerce including:

   a. records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind affecting interstate or foreign commerce or involving the transmission via interstate or foreign commerce, including by U.S. mail or by computer, of any child pornography or visual depiction of minors engaged in sexually explicit conduct;

   b. credit card information, including bills and payment information, regarding: purchase of or payment for memberships to web sites; and possession, receipt, sale, purchase, trade, transportation, or distribution of child pornography or visual depictions of

minors engaged in sexually explicit conduct; and

c. records, information, and items relating to violations of the statutes described above
including, records and information relating to sexual exploitation of children,
including emails, chats, file sharing or other communications by any user of the
device to communicate with other individuals for the purpose of obtaining,
distributing or trading child pornography.

3. Any storage media connected to the SUBJECT DEVICE used as a means to commit the
violations described above.

4. For any computer or storage medium whose seizure is otherwise authorized by this
warrant, and any computer or storage medium that contains or in which is stored records or
information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

a. evidence of who used, owned, or controlled the COMPUTER at the time the things
described in this warrant were created, edited, or deleted, such as logs, registry
entries, configuration files, saved usernames and passwords, documents, browsing
history, user profiles, email, email contacts, "chat," instant messaging logs,
photographs, and correspondence;

b. evidence of software that would allow others to control the COMPUTER, such as
viruses, Trojan horses, and other forms of malicious software, as well as evidence of
the presence or absence of security software designed to detect malicious software;

c. evidence of the lack of such malicious software;

d. evidence indicating how and when the computer was accessed or used to determine
the chronological context of computer access, use, and events relating to crime under

2

investigation and to the computer user;

e. evidence of all wireless networks, or telecommunication carrier services used to access the internet, and the dates and times of access;

f. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

g. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

h. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

i. evidence of the times the COMPUTER was used;

j. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. evidence identifying the website or other location from which images of child pornography were downloaded, including date and time of such downloads;

m. evidence identifying whether image and/or video files containing child pornography were ever viewed, including date and time of such viewing;

n. evidence identifying whether images and/or videos files were deleted, including date and time of deletion;

o. evidence relevant to the creation dates of all visual depictions of minors engaged in sexually explicit conduct, including evidence derived from metadata obtained from child pornographic videos and images;

p.  records of or information about the COMPUTER's Internet activity, including
    firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web
    pages, search terms that the user entered into any Internet search engine, and records
    of user-typed web addresses; and

q.  contextual information necessary to understand the evidence described in this
    attachment.

**Definition of Terms**

As used above, the terms "records" and "information" includes all forms of creation or
storage, including any form of computer or electronic storage (such as hard disks or other media
that can store data); any handmade form (such as writing); any mechanical form (such as printing
or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives,
videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or
other high speed data processing devices performing logical, arithmetic, or storage functions,
including desktop computers, notebook computers, mobile phones, tablets, server computers, and
network hardware.

The term "storage medium" includes any physical object upon which computer data can be
recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and
other magnetic or optical media.

4

## SEARCH PROCEDURE

In searching for data capable of being read, stored, or interpreted by a computer or storage device, law enforcement personnel executing the search warrant will employ the following procedure:

    a.    Law enforcement personnel (including, but not limited to, computer personnel) will examine the digital device to determine if it contains any data that falls within the list of items to be seized as set forth in the warrant and in Attachment B.

    b.    Law enforcement personnel will use procedures designed to identify items to be seized under the warrant. These procedures may include, without limitation, the use of a "hash value" library to exclude normal operating system files that do not need to be searched. In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

The government will retain a forensic image of each digital device subjected to analysis.

**END OF ATTACHMENT "B"**

5

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>IOmega External hard drive Serial # GSAB1322DA; Gray<br>PNY 512 MB Thumb Drive; Black PNY 8GB Thumb<br>Drive; Black SanDisk 16GB SD Card; et al. | )<br>)<br>)<br>)<br>)<br>) | Case No.  1 : 16 - sw - 00346 - SAB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A - attached hereto and incorporated herein.

located in the _____ Eastern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

Contraband, evidence, and instrumentalities of violations of Title 18, United States Code, Section 2252(a)(2), (a)(5) (receipt and possession of child pornography), as more fully described in Attachment B - attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2252(a)(2) | Receipt and distribution of child pornography |
| 18 U.S.C. § 2252(a)(5) | Possession of child pornography |

The application is based on these facts:

See Affidavit of FBI Special Agent Greg Wenning, attached hereto and incorporated herein.

☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 41(d)(3).

Date:  **Dec 28, 2016**

City and state:  Fresno, California

*Applicant's signature*

Greg Wenning, Special Agent
*Printed name and title*

*Judge's signature*

Stanley A. Boone, Hon. United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, Greg Wenning, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a warrant to search the following seven devices (hereinafter the

"**SUBJECT DEVICES**") further described in Attachment A, for the things described in

Attachment B:

    A. iOmega External hard drive – Serial # GSAB1322DA (**SUBJECT DEVICE A**)

    B. Gray PNY 512 MB Thumb Drive (**SUBJECT DEVICE B**)

    C. Black PNY 8GB Thumb Drive (**SUBJECT DEVICE C**)

    D. Black SanDisk 16GB SD Card (**SUBJECT DEVICE D**)

    E. Blue Lexar 1GB SD Card (**SUBJECT DEVICE E**)

    F. Kingston 16GB Micro SD card (**SUBJECT DEVICE F**)

    G. Black Western Digital My Passport Ultra External Hard Drive – Serial #

      WXD1A6307408 (**SUBJECT DEVICE G**)

2.       I have been employed as a Special Agent (SA) of the Federal Bureau of

Investigation (FBI) since February 2013, and am currently assigned to the Sacramento Division,

Stockton Resident Agency. While employed by the FBI, I have investigated federal criminal

Affidavit for Search Warrant

violations related to child exploitation, and child pornography. During the investigation of these cases, I have executed and participated in the execution of numerous search and arrest warrants and seized evidence of violations of United States law. I have also attended training classes and seminars concerning computer crimes and the sexual exploitation of children. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. Moreover, I am a federal law enforcement officer who is engaged in enforcing the criminal laws, including 18 U.S.C. §§ 2251 and 2252A and I am authorized by the Attorney General to request a search warrant. I have been the affiant for over twenty search warrants including search warrants executed for and on digital devices which were found to contain child pornography and other digital evidence.

3.      I make this affidavit based on personal knowledge gathered during my participation in this investigation, and my training and experience as an FBI Special Agent. I have interviewed the subject of this investigation, reviewed evidence from previously seized digital devices containing child pornography, reviewed emails, employment records, internet logs and other evidence, and spoke to and consulted with other agents and/or representatives from law enforcement who have extensive experience investigating crimes involving possession of child pornography. I obtained facts presented in this affidavit from these sources. As this affidavit is being submitted for the limited purpose of seeking authorization for a warrant to search the devices described herein, I have not set forth every fact learned during the course of

2

Affidavit for Search Warrant

the investigation. Facts not set forth herein are not being relied upon in reaching my conclusion that warrant should be issued.

    4.     This affidavit is submitted in support of an application for a search warrant for contraband, evidence of a crime, fruits of a crime, and instrumentalities of violations of: Title 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) (receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography); 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (possession of, knowing access, conspiracy to access, or attempted access with intent to view child pornography). As set forth below, I have probable cause to believe such items, as set forth in Attachment B, which is attached hereto and incorporated herein by this reference, are currently located within the **SUBJECT DEVICES**, which are currently located at the U. S. Forest Service (Forest Service) Supervisors Office in the County of Tuolumne in the Eastern District of California, and are more fully described in Attachment A, which is also attached hereto and incorporated herein by this reference.

    5.     The statements contained in this affidavit are based in part on: information provided by other law enforcement officers and agents involved in this investigation; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by FBI and USDA agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent with the FBI.

3

Affidavit for Search Warrant

6.     In summary, this search warrant application is part of an investigation regarding

child pornography possession by Chad LILLY.  Your affiant applied for a warrant to search

LILLY's government-issued laptop after routine network monitoring by LILLY's employer

discovered that an IP address associated with LILLY appeared to be accessing websites and file

names associated with child pornography; that warrant was authorized on June 3, 2016, by U.S.

Magistrate Judge Erica P. Grosjean, Case No. 16-SW-000131-EPG.  Analysis of the information

seized pursuant to that warrant showed that the laptop contained child pornography, and

questioning of LILLY revealed that LILLY may have placed child pornography onto other

devices including a personally owned iPad and several external storage devices.  Recounting

those facts in more detail, USDA OIG SA Marin applied for a second warrant to search

LILLY's personal iPad.  That warrant was authorized on June 16, 2016, by U.S. Magistrate

Judge Sheila K. Oberto, Case No. 16-SW-000154-EPG.  Agents also conducted a consent search

of several external digital storage devices owned or accessed by LILLY, and located an image of

child pornography on one of the external devices. This current application incorporates the

information set forth in both prior search warrant applications: Exhibit 1, which is attached

hereto and incorporated by reference, is the "Government Laptop Affidavit"; and Exhibit 2,

which is attached hereto and incorporated by reference, is the "Personal iPad Affidavit."

## APPLICABLE LAW

7.     This investigation concerns alleged violations of Title 18 U.S.C.

§ 2252A(a)(2)(A) and (b)(1) - Receipt and distribution of, conspiracy to receive and distribute,

and attempt to receive and distribute child pornography; and 18 U.S.C. § 2252A(a)(5)(B) and

4

Affidavit for Search Warrant

(b)(2) - Possession of, knowing access, conspiracy to access, or attempted access with intent to view child pornography (hereinafter the Specified Federal Offenses).

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      The **SUBJECT DEVICES** are currently in the custody of **LILLY's** supervisor Forest Service Patrol Captain HEIDI RIECK at the United States Forest Supervisors Office, 19777 Greenley Rd., Sonora California 95370. The **SUBJECT DEVICES** to be searched are the following:

> A.  iOmega External hard drive – Serial # GSAB1322DA **(SUBJECT DEVICE A)**
>
> B.  Gray PNY 512 MB Thumb Drive **(SUBJECT DEVICE B)**
>
> C.  Black PNY 8GB Thumb Drive **(SUBJECT DEVICE C)**
>
> D.  Black SanDisk 16GB SD Card **(SUBJECT DEVICE D)**
>
> E.  Blue Lexar 1GB SD Card **(SUBJECT DEVICE E)**
>
> F.  Kingston 16GB Micro SD card **(SUBJECT DEVICE F)**
>
> G.  Black Western Digital My Passport Ultra External Hard Drive – Serial # WXD1A6307408 **(SUBJECT DEVICE G)**

9.      As described in more detail below, **SUBJECT DEVICES A, B, C, D, E, and F** were collected from **LILLY's** office at 1 Pinecrest Lake Rd., Pinecrest, CA during a search to which **LILLY** consented in writing. The search was conducted by your affiant and Forest Service SA Patrick Brown and Forest Service SA Alex Lomvardias on June 15, 2016, and **SUBJECT DEVICES A, B, C, D, E, and F** were provided to **LILLY's** supervisor HEIDI RIECK for safekeeping the same day. **SUBJECT DEVICE G** was located by **LILLY's** partner,

5

Affidavit for Search Warrant

Forest Service Law Enforcement Officer N.W. in **LILLY's** Pinecrest office on approximately October 25, 2016, and was placed into a secure locker. **SUBJECT DEVICE G** was retrieved from the secure locker by HEIDI RIECK on October 26, 2016, and is currently being held by HEIDI RIECK with the other **SUBJECT DEVICES** for safekeeping.

      10.    The applied-for warrant would authorize the search and forensic examination of the **SUBJECT DEVICES** described in Attachment A for the purpose of identifying and seizing electronically stored data particularly described in Attachment B.

## CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS

      11.    Through my experience and training, and that of other FBI Special Agents, the following traits and characteristics are generally found to exist and be true in cases involving individuals who collect child pornography:

     A.  The majority of individuals who collect child pornography are persons who have a sexual attraction to children. They receive sexual gratification and satisfaction from sexual fantasies fueled by depictions of children that are sexual in nature.

     B.  Many individuals who collect child pornography often seek out likeminded individuals, either in person or on the internet, to share information and trade depictions of child pornography and child erotica as a means of gaining status, trust, acceptance and support. This contact also helps these individuals to rationalize and validate their deviant sexual interest and associated behavior. The different internet based vehicles used by such individuals to communicate with

6

Affidavit for Search Warrant

each other include, but are not limited to, websites, email, email groups, bulletin
boards, internet chat programs, newsgroups, instant messaging, and other similar
vehicles.

C.   Many individuals who collect child pornography often collect, read, copy or
maintain names, addresses (including email addresses), phone numbers, or lists of
persons who have advertised or otherwise made known in publications and on the
internet that they have similar sexual interests. These contacts are maintained as a
means of personal referral, exchange or commercial profit. These names may be
maintained in the original medium from which they were derived, in telephone
books or notebooks, on computer storage devices, or merely on scraps of paper.

D.   The majority of individuals who collect child pornography rarely, if ever, dispose
of their sexually explicit materials, and may go to great lengths to conceal and
protect their collections from discovery, theft, and damage. Your Affiant knows
from training and experience that such individuals have been known to maintain
possession of their child pornography for years, or even decades. They almost
always maintain their collections in the privacy and security of their homes or
other secure locations.

12.   Your affiant believes the subject of this investigation to be a collector of child
pornography because, as further described herein, the subject has specifically visited websites
where known child pornography collectors go to obtain child pornography and the subject

7

Affidavit for Search Warrant

personally viewed child pornography images on these sites even while he was aware his internet activity was being logged and monitored by his government, law-enforcement employer.

## STATEMENT OF PROBABLE CAUSE

### Summary

13.     **CHAD M. LILLY** (hereinafter referred to as **LILLY**) was, at the time of the events discussed below, a U.S. Forest Service Law Enforcement Officer. Routine network monitoring of his government network usage revealed that he downloaded child pornography to his issued Government Laptop. During an interview, **LILLY** admitted that he downloaded and viewed images of nude children on the Government Laptop and a personally owned iPad, and that he connected several external storage devices to the Government Laptop and may have saved images of nude children to those devices. A consent search by law enforcement revealed that **LILLY** did save child pornography to one external storage device located in his Forest Service office, and forensics showed that several of the **SUBJECT DEVICES** were likely connected to the Government Laptop after child pornography was downloaded and viewed on the Government Laptop.

### Identification of Government Laptop Computer Used to Access Child Pornography

14.     On January 23, 2016, the USDA, Office of the Chief Information Officer (OCIO), Agriculture Security Operations Center (ASOC) notified USDA-OIG that while conducting network monitoring, they discovered that pornography was viewed from a Forest Service computer utilizing IP address 166.5.139.77 and assigned to **LILLY**.

8

Affidavit for Search Warrant

15.     As is more fully set forth in the Government Laptop Affidavit, myself and USDA

OIG SA Marin continued investigating this matter. USDA OIG SA Marin and FBI SA Josh

Ratzlaff reviewed several images that ASOC identified as being downloaded to **LILLY's**

government laptop, and confirmed that they met the definition for child pornography under Title

18 U.S.C. § 2256. The nude minor females in the images were depicted in unnatural and

sexually-suggestive poses.

16.     USDA OIG SA Marin spoke with **LILLY's** Forest Service supervisor, who

advised that the Forest Service has never authorized or directed **LILLY** to access child

pornography for any work-related assignment or in any official capacity, and that any access to

this material by **LILLY** would be for personal reasons.

### Search Warrant and Forensic Exam on the Government Laptop

17.     On June 2, 2016, the Hon. Erica P. Grosjean, U.S. Magistrate Judge, authorized a

Federal Search and Seizure Warrant issued under Case No. 16-SW-000131-EPG (under seal), to

search the Government Laptop and seize evidence related to the receipt and possession of child

pornography.

18.     On June 14, 2016, pursuant to the above Federal Search and Seizure Warrant,

Special Agents from the USDA OIG and FBI obtained the Government Laptop from **LILLY's**

supervisor HEIDI RIECK, who personally received the laptop from **LILLY** that morning at the

U.S. Forest Service office in Sonora, CA.

19.     When agents received the laptop it was powered off and required Forest Service

administrator password access. Forest Service information technology personnel assisted FBI

9

Affidavit for Search Warrant

Digital Forensic Examiner (DFE) SA Scott Medlin by unlocking the computer. DFE SA Medlin then used forensic software to conduct a forensic examination of the Government Laptop and located the following information on the laptop:

A.    At least 100 images of child pornography, including the following, which were stored in the temporary internet files and were viewed on the Government Laptop:

      i.   File Name – 154x166_27PKNS8NN.jpg – This image is a juvenile female lying on her back, with her genitals displayed as the focus of the photo.

      ii.   File name – 154x166_2NPQ578Z7.jpg – This image is of a nude adult female, and a juvenile female standing nude, posed in a sexual manner with her genitals displayed.

      iii.   File name – 154x156_2[5].jpg – This image is of a juvenile female, nude, dancing and posed in a sexual manner with her genitals displayed.

      iv.   File name – 154x166-3[9].jpg – This image is of a juvenile female, nude, standing with her legs slightly spread and her genitals displayed. The photo is shot from below the female to make the female's genitals the focus of the photo.

      v.   File name – 154x166_2[10].jpg – This image is of two juvenile females nude with only boots on, standing in the snow. One female is posed facing the camera with her legs slightly spread to display her genitals.

10

Affidavit for Search Warrant

B.     The Government Laptop connected to Purenudism.com several hundred times between approximately May 18, 2016, and May 23, 2016. Purenudism.com is a website which is known to law enforcement to contain nude images of children, child erotica, and child pornography.

C.     Your affiant conducted a more extensive forensic review with the assistance of DFE SA Scott Medlin with the following findings:

> i.   Approximately 258 images and 19 videos of child pornography were located on the Government Laptop, with metadata showing that the files were created or modified between December 17, 2015, and May 23, 2016.
>
> ii.  The Government Laptop was connected to as many as 18 different external digital storage devices, including USB flash memory devices, external hard disk drives, and an Apple iPad.

### Interview of Chad Lilly

20.     On June 14, 2016, your affiant and USDA OIG SA Marin interviewed LILLY at the Forest Service Supervisor's Office, 19777 Greenley Road, Sonora, California. LILLY was informed of his employee rights and he agreed to proceed with the interview. During the interview, LILLY admitted that he viewed various websites and images containing nude photos of children, particularly from the website purenudism.com, on three to four occasions from his Government laptop. LILLY further stated that he viewed and downloaded images on a personally owned iPad on at least six occasions and has viewed and downloaded images

11

Affidavit for Search Warrant

containing nude photos of children for several years. **LILLY** also admitted to connecting

several digital storage devices to his Government Laptop, and said that he may have saved

images of nude children off to one or more of these storage devices. **LILLY** denied that he was

aware the images were illegal child pornography, and maintained that he believed the nude

images of children he had saved did not satisfy the legal definition of child pornography.

**LILLY** provided written consent on the FBI's Consent to Search Form, allowing agents to

search his office at 1 Pinecrest Lake Rd., Pinecrest, CA and digital devices that were located

inside the office; his Forest Service issued iPhone 6; and his home computer and personal iPad

mini. When agents went to LILLY's house to retrieve the personal iPad and home computer, his

spouse **K. LILLY**, who also has ownership of the personal iPad and home computer, refused

consent to search. **LILLY** provided the password for the iPad, which was seized to prevent

destruction of evidence and was held by law enforcement pending the issuance of a warrant.

### Search Warrant and Forensic Exam on LILLY's personal iPad

21.     USDA OIG SA Marin applied for a warrant to search LILLY's personal iPad; this

warrant was authorized on June 16, 2016, by United States Magistrate Judge Sheila K. Oberto,

Case No. 16-SW-000154-EPG. A subsequent search and forensic exam of the iPad by the FBI

did not locate any images of child pornography on this device.

### Consent Search and Forensic Exam on LILLY's Forest Service Issued iPhone

22.     On June 14, 2016, during the interview of **LILLY**, he provided written consent on

the FBI's Consent to Search Form, consenting to the search of his Forest Service issued iPhone

12

Affidavit for Search Warrant

B10809NRCB, contained several pictures of **LILLY**, a document regarding his military service

in the Army, and one image of child pornography, with file name !MG_1482.PNG, which

appeared to be a screenshot from an Apple device. Specifically, the image depicted a juvenile

female, nude, standing on a beach with her legs slightly spread and her genitals displayed. The

photo is shot from below the female to make the female's genitals the focus of the photo. The

other four devices did not contain child pornography.

### Investigation regarding SUBJECT DEVICES

26.    In addition to the above items, the following **SUBJECT DEVICES** not

specifically listed on the Consent To Search form were located inside **LILLY**'s office, and were

collected by Forest Service SA Brown and provided to HEIDI RIECK for safekeeping on June

15, 2016:

    A.  iOmega External hard drive – Serial # GSAB1322DA **(SUBJECT DEVICE A)**

    B.  Gray PNY 512 MB Thumb Drive **(SUBJECT DEVICE B)**

    C.  Black PNY 8GB Thumb Drive **(SUBJECT DEVICE C)**

    D.  Black SanDisk 16GB SD Card **(SUBJECT DEVICE D)**

    E.  Blue Lexar 1GB SD Card **(SUBJECT DEVICE E)**

    F.  Kingston 16GB Micro SD card **(SUBJECT DEVICE F)**

27.    Prior to the consent search, HEIDI RIECK told your affiant and USDA OIG SA

Marin that **LILLY** should have a Western Digital My Passport Ultra External Hard Drive in his

possession that was issued to him by the Forest Service to use to back up his Government

Laptop. Affiant was unable to locate this hard drive in **LILLY**'s Pinecrest office. Forest Service

14

Affidavit for Search Warrant

SA Brown also conducted an inventory search of **LILLY's** Forest Service vehicle on June 15, 2016, and did not locate the Western Digital My Passport Ultra External Hard Drive.

    28.    On October 26, 2016, **LILLY's** supervisor HEIDI RIECK, notified your affiant that she had located a Black Western Digital My Passport Ultra External Hard Drive S/N WXD1A6307408 **(SUBJECT DEVICE G)**, secured in a locker in **LILLY's** Pinecrest office. HEIDI RIECK believed that **LILLY's** partner Forest Service Law Enforcement Officer N.W. may have located the hard drive and placed it into the locker.

    29.    On November 23, 2016, N.W. told your affiant that he could not recall the exact date, but on approximately October 25, 2016, he saw **SUBJECT DEVICE G** on the desk in **LILLY's** Pinecrest office and placed it into the locker where HEIDI RIECK later found it.  N.W. did not attempt to access the hard drive, but believed it was **LILLY's** because it was in **LILLY's** office and N.W. had his Forest Service issued Western Digital My Passport Ultra hard drive in his possession.  N.W. did not know who had placed the hard drive on the desk or how long it had been there but stated that only LILLY, HEIDI RIECK and he, had access to **LILLY's** office.

    30.    After your affiant determined that the Government Laptop contained several hundred images of child pornography, I reviewed a forensic report generated by FBI DFE SA Scott Medlin regarding the laptop to determine if any of the **SUBJECT DEVICES** were connected to the laptop. The forensic report shows that as many as 10 different external digital storage devices, including the following, were connected to the laptop after the first image of child pornography was created or modified on the Government Laptop on December 17, 2015:

    A.  Iomega Corp. Ext. Hard Disk Drive (Serial #0000D20139EB)

    B.  Western Digital My Passport USB Device (Serial #575844314136333037343038)

15

Affidavit for Search Warrant

C. PNY USB 3.0 USB Device (Serial #7C624AA4FB354F87B0FE2Fc7EAF652)

D. USB Mass Storage Device 512M Stick

E. USB Mass Storage Device (Serial #0604210307272)

F. Five (5) USB Composite Devices – one with Serial #CN4CAJJ0BZ

G. SanDisk Cruzer USB Device

H. Kingston Data Traveler 2.0 USB Device (Serial #00147854487EED31E748025D)

31.     Although the forensic tool captured a serial number for the above devices which differs from the serial numbers on the **SUBJECT DEVICES**, DFE SA Medlin provided the following explanation of why this type of serial number discrepancy is not necessarily inconsistent with the **SUBJECT DEVICES** having been connected to the Government Laptop: Windows assigns a unique identifier to each device that is connected to the laptop, and the identifier or serial number is not necessarily passed from the device to Windows when the device is connected to the laptop. In the instance of a Micro SD card being connected, it is possible that a generically-named device, for example "USB Composite Device," is a card reader that a micro SD card could have been plugged into. The reader would appear in the registry under "USB Devices" instead of the card itself. Less expensive devices pass little or no info to the laptop so the forensic tool will show generic names in the device registry, and the laptop's software labels the device itself for tracking purposes. When a device does pass a serial number to a laptop operating on the Windows OS like **LILLY's** Government Laptop, the serial number captured may be from the external storage device's circuit board, which often differs from the number printed and the device case. Since device software between manufacturers and programmers does not follow any naming rules, it is difficult to predict how one software will handle or name

16

Affidavit for Search Warrant

an external device connected through a USB or other port on the laptop. Because of these issues, experienced law enforcement computer forensic examiners have found that for external storage devices known to have been connected to a particular computer, the serial number in the Windows registry of the computer often does not match the serial number printed on the case of the external storage device.

32.    On September 14, 2016, Forest Service Patrol Captain HEIDI RIECK advised your affiant that **LILLY** had resigned from the Forest Service on September 11, 2016, had collected all of his personal possessions, and had told HEIDI RIECK that he no longer wanted any of the items he left behind at his Forest Service office.

33.    On October 27, 2016, your affiant and FBI Task Force Officer Rafael Vega spoke with **LILLY** telephonically. **LILLY** advised that he believed all of the **SUBJECT DEVICES** were Forest Service property. He verbally consented to the search of the **SUBJECT DEVICES** by Forest Service Patrol Captain HEIDI RIECK, but declined consent to a search of the **SUBJECT DEVICES** by your affiant.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

34.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information, including deleted information, can sometimes be recovered with forensics tools.

35.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct

17

Affidavit for Search Warrant

evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

    A. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    B. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    C. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    D. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

18

Affidavit for Search Warrant

information necessary to understand other evidence also falls within the scope of the warrant.

E.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

36.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT DEVICES** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the **SUBJECT DEVICES** to human inspection in order to determine whether it is evidence described by the warrant.

## SEARCH AND SEIZURE OF COMPUTER/ELECTRONIC/DIGITAL DATA

37.   This application seeks permission to access, search for, and seize evidence and contraband of the crime described above stored on the **SUBJECT DEVICES**, which are capable of connecting to the internet and storing evidence of the crime.

38.  I have spoken with FBI Special Agent Scott Medlin who has training in the forensic examination of computers and digital devices.  SA Medlin is a certified FBI Computer Analysis Response Team member and has many years of investigative experience in computer-related crimes, including the possession of child pornography.  SA Medlin related information to me and/or confirmed information for me as noted below.

19

Affidavit for Search Warrant

39.     Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including SA Medlin, I know that computers and digital devices are often used to store information, very much the same way paper, ledgers, files and file cabinets are used to store information. I know that it is common today for businesses to utilize computers to conduct their business and to store information related thereto. I also know that it is common for individuals to have personal computers and to use these computers to conduct their personal affairs, their business affairs, and to store information related thereto. I know based on my training and experience, including prior investigations specifically related to the investigation of the possession of child pornography, that subjects who are engaged in the possession of child pornography commonly store information related to their activities on computers and digital devices.

## REMOVAL OF DATA STORAGE DEVICES FOR REVIEW IN A LABORATORY SETTING MAY BE REQUIRED

40.     Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including SA Medlin, I know that a forensic image is an exact physical copy of a data storage device. A forensic image captures all data on the subject media without viewing or changing the data in any way. Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of data for information subject to seizure pursuant to the warrant. I also know that during the search of a device it is not always possible to create a forensic image of or search digital devices or media for data. I also know that it is frequently necessary to remove

20

Affidavit for Search Warrant

digital devices or media for later laboratory evaluation off-site under controlled circumstances. This is true for a number of reasons, including the following:

    A.    Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment. Because there are so many different types of digital devices and software in use today, it is difficult to anticipate all of the necessary technical manuals, specialized equipment, and specific expertise necessary to conduct a thorough search of the media to ensure that the data will be preserved and evaluated in a useful manner.

    B.    Searching digital devices can require the use of precise, scientific procedures designed to maintain the integrity of the evidence. The recovery of such data may require the use of special software and procedures, such as those used in a law enforcement laboratory.

    C.    The volume of data stored on many digital devices is typically so large that it will be highly impractical to search for data during the execution of the physical search of the Device. Storage devices capable of storing 1000 gigabytes of data are now commonplace in desktop computers. It can take several hours, or even days, to image a single hard drive. The larger the drive, the longer it takes. Depending upon the number and size of the devices, the length of time that agents must remain onsite to image and examine digital devices can become impractical.

    D.    Since digital data may be vulnerable to inadvertent modification or destruction, a controlled environment, such as a law enforcement laboratory, may be essential to conduct a complete and accurate analysis of the digital devices from which

21

Affidavit for Search Warrant

the data will be extracted. Software used in a laboratory setting can often reveal the true nature of data. Moreover, a computer forensic reviewer needs a substantial amount of time to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or an instrumentality of a crime.

E.      Analyzing the contents of a computer or other electronic storage device, even without significant technical difficulties, can be very challenging, and a variety of search and analytical methods must be used. For example, searching by keywords, which is a limited text-based search, often yields thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process. The computer may have stored information about the data at issue which may not be searchable text, such as: who created it; when and how it was created, downloaded, or copied; when it was last accessed; when it was last modified; when it was last printed; and when it was deleted. The relevance of this kind of data is often contextual. Furthermore, many common email, database, and spreadsheet applications do not store data as searchable text, thereby necessitating additional search procedures. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed data requires a search of events that occurred on the computer in the time periods surrounding activity regarding the relevant data. Information about which users logged in, whether users shared passwords, whether a computer was connected to other computers or networks, and whether the users accessed or used other programs or services in the relevant time period, can help determine who was sitting at the keyboard

22

Affidavit for Search Warrant

F.      Searching digital devices can require the use of precise, scientific procedures designed to recover latent data. The recovery of such data may require the use of special software and procedures. Data that represents electronic files or remnants of such files can be recovered months or even years after it has been downloaded onto a hard drive, deleted, or viewed via the Internet. Even when such files have been deleted, data can be recovered months or years later using readily available forensic tools. Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in space on the hard drive or other storage media that is not allocated to an active file. In addition, a computer's operating system may keep a record of deleted data in a swap or recovery file or in a program specifically designed to restore the computer's settings in the event of a system failure.

41.     This warrant seeks authority to seize contextual data, that is, evidence of how a digital device has been used, what it has been used for and who has used it. It can be very important in criminal cases to seek "attribution" data so that an event or communication can be associated with a person. Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices including SA Scott Medlin this authority is sought for a number of reasons:

A.      In some instances, the computer "writes" to storage media without the specific knowledge or permission of the user. Generally, data or files that have been received via the Internet are automatically downloaded into a temporary Internet

23

Affidavit for Search Warrant

directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve artifacts of electronic activity from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer usage. Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question. Given the interrelationships of the data to various parts of the computer's operation, this information cannot be easily segregated.

B.   Digital data on the hard drive that is not currently associated with any file may reveal evidence of a file that was once on the hard drive but has since been deleted or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, email programs, and chat programs store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations

24

Affidavit for Search Warrant

(or on other devices).

      C.     Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of the items sought by this application. Additionally, since computer drives may store artifacts from the installation of software that is no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timelines of usage, confirming the identification of certain users, establishing a point of reference for usage and, in some cases, assisting in the identification of certain users. This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations. Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

## SEARCH PROCEDURE

      42.     In searching for data capable of being read, stored, or interpreted by a computer or storage device, law enforcement personnel executing the search warrant will employ the following procedure:

      A.     Law enforcement personnel (including, but not limited to, computer

25

Affidavit for Search Warrant

personnel) will examine the digital device to determine if it contains any data that falls within the list of items to be seized as set forth in the warrant and in Attachment B.

   B.  Law enforcement personnel will use procedures designed to identify items to be seized under the warrant. These procedures may include, without limitation, the use of a "hash value" library to exclude normal operating system files that do not need to be searched. In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

   43.  The search of the devices will be executed by law enforcement within sixty (60) days from the issuance of this warrant. If the search cannot be completed within sixty days due to encryption, password protection, or other technical issues, law enforcement will apply for an extension of the warrant and provide justification as to why additional time is necessary.

**RETENTION OF IMAGE**

   44.  The government will retain a forensic image of each digital device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at a trial; responding to any potential questions regarding the corruption of data; establishing the chain of custody of data; refuting any potential claims of fabrication, tampering, or destruction with/of data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

   45.  I am aware that 18 U.S.C. § 3509(m)(1) requires that "any property or material

26

Affidavit for Search Warrant

that constitutes child pornography...shall remain in the care, custody and control of either the Government or the Court."

46.     Because of the nature of child pornography investigations, and the fact that collectors of child pornography often delete child pornography images in an attempt to conceal their activity, a thorough laboratory review of any seized digital items will be required to ensure that child pornography does not exist on the devices. Because of this, on-site imaging and return of devices is not feasible because law enforcement would risk leaving devices containing child pornography with non-government individuals for whom it is illegal to possess this material. The government will return any seized items within sixty (60) calendar days unless, under the law, the government may retain it for use as evidence or it is contraband or a forfeitable instrumentality or fruit of a crime, or unless such date is further extended by the Court.

## INVENTORY AND RETURN

47.     The search warrant return to the Court will describe the physical storage media that were seized or imaged.

## PRIOR EFFORTS TO OBTAIN EVIDENCE

48.     The government has not made any prior efforts to obtain evidence sought through the execution of this search warrant.

## CONCLUSION

49.     Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits, and

27

Affidavit for Search Warrant

instrumentalities of these offenses, more fully described in Attachment B of this Affidavit, are located on the **SUBJECT DEVICES**, further described in Attachment A. I respectfully request that this Court issue a search warrant for the **SUBJECT DEVICES**, authorizing the seizure and search of the items described in Attachment B.

Respectfully submitted,

GREG WENNING
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 41(d)(3) before me this 28th day of December, 2016.

HON. STANLEY A. BOONE
United States Magistrate Judge

Approved as to form:

/s/ William J. Edelman
WILLIAM J. EDELMAN
Special Attorney to the U.S. Attorney General

Attachments:
Attachment A – Items to be Searched
Attachment B – Items to be Seized and Examined
Exhibit 1 – Government Laptop Affidavit
Exhibit 2 – Government iPad Affidavit

28

Affidavit for Search Warrant

## ATTACHMENT A

### DESCRIPTION OF ITEMS TO BE SEARCHED

The SUBJECT DEVICES to be searched are currently located at the United States Forest Service Office at 19777 Greenley Rd., Sonora, CA 95370, and are more particularly described below:

A.  iOmega LPHD-UP3 External hard drive – Serial Number GSAB1322DA

B.  Gray PNY 512 MB Thumb Drive

C.  Black PNY 8GB Thumb Drive

D.  Black SanDisk 16GB SD Card

E.  Blue Lexar 1GB SD Card

F.  Kingston 16GB Micro SD card

G.  Black My Passport Ultra External Hard Drive – Serial Number WXD1A6307408


This warrant authorizes a search of the above devices for the purpose of identifying and seizing information fully described in Attachment B.

## END OF ATTACHMENT "A"

Search Warrant Attachment

**ATTACHMENT B**

**INFORMATION TO BE SEIZED**

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of the Specified Federal Offenses defined in Title 18, U.S.C., § 2252A:

1.   Any child pornography, or visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18 U.S.C. § 2256 and child erotica, in any format (including deleted files, emails, digital still and video files).

2.   Any items, images, documents, communications, records, and information pertaining to the possession, receipt, transmission, sale, purchase, trade, or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct that affected or were transmitted or received via computer or some other facility or means of interstate or foreign commerce including:

    a.   records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind affecting interstate or foreign commerce or involving the transmission via interstate or foreign commerce, including by U.S. mail or by computer, of any child pornography or visual depiction of minors engaged in sexually explicit conduct;

    b.   credit card information, including bills and payment information, regarding: purchase of or payment for memberships to web sites; and possession, receipt, sale, purchase, trade, transportation, or distribution of child pornography or visual depictions of minors engaged in sexually explicit conduct; and

    c.   records, information, and items relating to violations of the statutes described above including, records and information relating to sexual exploitation of children, including emails, chats, file sharing or other communications by any user of the device to communicate with other individuals for the purpose of obtaining, distributing or trading child pornography.

2

Search Warrant Attachment

3. Any computers or storage media used to commit the offenses described above.

4. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence of all wireless networks, or telecommunication carrier services used to access the internet, and the dates and times of access;

   f. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   g. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   h. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

   i. evidence of the times the COMPUTER was used;

   j. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

   k. records of or information about Internet Protocol addresses used by the COMPUTER;

   l. evidence identifying the website or other location from which images of child

3

Search Warrant Attachment

pornography were downloaded, including date and time of such downloads;

m. evidence identifying whether image and/or video files containing child pornography were ever viewed, including date and time of such viewing;

n. evidence identifying whether images and/or videos files were deleted, including date and time of deletion;

o. evidence relevant to the creation dates of all visual depictions of minors engaged in sexually explicit conduct, including evidence derived from metadata obtained from child pornographic videos and images;

p. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

q. contextual information necessary to understand the evidence described in this attachment.

5. Records, information, and items relating to violations of the statutes described above including:

a. Records, information, and items relating to the occupancy, ownership or use of the location being searched, including utility and telephone bills, mail envelopes, or addressed correspondence; Records, information, and items relating to the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes; and

b. Records and information relating to the identity or location of the persons suspected of violating the statutes described above.

**Definition of Terms**

As used above, the terms "*records*" and "*information*" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

4

Search Warrant Attachment

The term "*computer*" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "*storage medium*" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## SEARCH PROCEDURE

The search of the devices will be executed by law enforcement within sixty (60) days from the issuance of this warrant. If the search cannot be completed within sixty days due to encryption, password protection, or other technical issues, law enforcement will apply for an extension of the warrant and provide justification as to why additional time is necessary.

In searching for data capable of being read, stored, or interpreted by a computer or storage device, law enforcement personnel executing the search warrant will employ the following procedure:

1.    *On-site search, if practicable.* Law enforcement officers trained in computer forensics (hereafter, "computer personnel"), if present, may be able to determine if digital devices can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve data on the devices and conduct such a search if deemed practicable. Any device searched on-site will be seized if it contains any data falling within the list of items to be seized as set forth in the warrant and in Attachment B.

2.    *On-site imaging, if practicable.* If a digital device cannot be searched on-site as described above, the computer personnel, if present, will determine whether the device can be imaged on-site in a reasonable amount of time without jeopardizing the ability to preserve the data and conduct such imaging if deemed practicable.

3.    *Seizure of digital devices for off-site imaging and search.* If no computer personnel are present at the execution of the search warrant, or if they determine that a digital device cannot be searched or imaged on-site in a reasonable amount of time and

5

Search Warrant Attachment

without jeopardizing the ability to preserve data, the digital device will be seized and transported to an appropriate law enforcement laboratory for review.

4.      Law enforcement personnel (including, but not limited to, computer personnel) will examine the digital device to determine if it contains any data that falls within the list of items to be seized as set forth in the warrant and in Attachment B.

5.      Law enforcement personnel will use procedures designed to identify items to be seized under the warrant.  These procedures may include, without limitation, the use of a "hash value" library to exclude normal operating system files that do not need to be searched.   In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

## RETENTION OF IMAGE

The government will retain a forensic image of each digital device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at a trial; responding to any potential questions regarding the corruption of data; establishing the chain of custody of data; refuting any potential claims of fabrication, tampering, or destruction with/of data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

**END OF ATTACHMENT "B"**

6

Search Warrant Attachment

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

**FILED**

JAN 09 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>Black Western. Digital My Passport Ultra External Hard<br>Drive – Serial # WXD1A6307408 located at 19777<br>Greenley Rd., Sonora, California 95370 | )<br>)<br>)<br>)   Case No.<br>)       1: 1 6 SW   0 0 3 4 6 --- SAB<br>) |

## SEARCH AND SEIZURE WARRANT

To:       Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the       Eastern       District of       California *(identify the person or describe the property to be searched and give its location)*:

See Attachment A - attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B - attached hereto and incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before       January 10, 2017       *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.       ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Any duty Magistrate Judge _____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:       **12:12 PM, Dec 28, 2016**

_____
Judge's Signature

City and state:       Fresno, California          Stanley A. Boone, Hon. United States Magistrate Judge
_____
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed:<br>12/30/2016 10:00 am | Copy of warrant and inventory left with:<br>Nicholas Wood |
| Inventory made in the presence of :<br>Nicholas Wood | | |

Inventory of the property taken and name of any person(s) seized:

Black My Passport Ultra External Hard Drive S/N WXD1A6307408

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 1/10/17

_____
*Executing officer's signature*

Velice BetSayad, Special Agent
_____
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

## UNITED STATES DISTRICT COURT

for the

Eastern District of California

JAN 09 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) Case No.   1: 1 6 SW   0 0 3 4 6 ─ SAB |
| Black SanDisk 16GB SD Card located at 19777 Greenley Rd., Sonora, California 95370 | ) ) ) |

### SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ **Eastern** _____ District of _____ **California** _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A - attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B - attached hereto and incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before _____ **January 10, 2017** _____ *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ **Any duty Magistrate Judge** _____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:    **12:13 PM, Dec 28, 2016**

*Judge's signature*

City and state:    Fresno, California

Stanley A. Boone, Hon. United States Magistrate Judge

*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed:<br>12/30/2016 10:00 am | Copy of warrant and inventory left with:<br>Nicholas Wood |
| Inventory made in the presence of :<br>Nicholas Wood | | |
| Inventory of the property taken and name of any person(s) seized: | | |

Black SanDisk 16 GB SD Card

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:   1/10/17

_____
*Executing officer's signature*

Velice BetSayad, Special Agent
_____
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED

JAN 10 2017

CLERK. U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   7: 1 6 SW   0 0 3 4 6 — SAB |
| Blue Lexar 1GB SD Card Card located at 19777 Greenley Rd., Sonora, California 95370 | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A - attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B - attached hereto and incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before ___January 10, 2017___   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Any duty Magistrate Judge___
                                                                                          *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   **12:11 PM, Dec 28, 2016**         _____
                                                                                  *Judge's signature*

City and state:      Fresno, California            Stanley A. Boone, Hon. United States Magistrate Judge
                                                                              *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed:<br>12/30/2016 10:00 am | Copy of warrant and inventory left with:<br>Nicholas Wood |

Inventory made in the presence of :
Nicholas Wood

Inventory of the property taken and name of any person(s) seized:

Blue Lexar 1 GB SD Card

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  1/10/17

_____
*Executing officer's signature*

Velice BetSayad, Special Agent
_____
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

FILED

JAN 10 2017

for the

Eastern District of California

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   7: 1 6 SW   0 0 3 4 6 — SAB |
| Black PNY 8GB thumb drive located at 19777 Greenley Rd., Sonora, California 95370 | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the        Eastern        District of         California        *(identify the person or describe the property to be searched and give its location)*:

See Attachment A - attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B - attached hereto and incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before     January 10, 2017     *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Any duty Magistrate Judge
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:     **12:12 PM, Dec 28, 2016**

_____
*Judge's signature*

City and state:       Fresno, California

Stanley A. Boone, Hon. United States Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed:<br>12/30/2016 10:00 am | Copy of warrant and inventory left with:<br>Nicholas Wood |

Inventory made in the presence of :
Nicholas Wood

Inventory of the property taken and name of any person(s) seized:

Black PNY 8 GB Thumb Drive

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 1/10/17

_____
*Executing officer's signature*

Velice BetSayad, Special Agent
_____
*Printed name and title*

Case 1:16-sw-00346-SAB *SEALED*   Document 4   Filed 01/10/17   Page 1 of 2

**FILED**

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

JAN 09 2017

for the

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Eastern District of California

BY _____
DEPUTY CLERK

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Gray PNY 512 MB thumb drive located at 19777 Greenley Rd., Sonora, California 95370 | ) ) ) |

Case No.  7: 1 6 SW   0 0 3 4 6 ---- SAB

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A - attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B - attached hereto and incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before   _January 10, 2017_   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____   _Any duty Magistrate Judge_ __
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   **12:12 PM, Dec 28, 2016**            _____
*Judge's signature*

City and state:     Fresno, California            Stanley A. Boone, Hon. United States Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed:<br>12/30/2016 10:00 am | Copy of warrant and inventory left with:<br>Nicholas Wood |

Inventory made in the presence of :
Nicholas Wood

Inventory of the property taken and name of any person(s) seized:

Gray PNY 512 MB Thumb Drive

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  1/10/17

_Executing officer's signature_

Velice BetSayad, Special Agent
_Printed name and title_

AO 93 (Rev. 11/13) Search and Seizure Warrant

## UNITED STATES DISTRICT COURT

FILED

for the

Eastern District of California

JAN 10 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

iOmega LPHD-UP3 external hard drive, serial number GSAB1322DA located at 19777 Greenley Rd., Sonora, California 95370

)
)
)
)
)
)

Case No.   7: 1 6 SW   0 0 3 4 6 ---- SAB

### SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____ *(identify the person or describe the property to be searched and give its location):*

See Attachment A - attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

See Attachment B - attached hereto and incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before   January 10, 2017   *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Any duty Magistrate Judge _____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   **12:11 PM, Dec 28, 2016**

City and state:     Fresno, California

*Judge's signature*

Stanley A. Boone, Hon. United States Magistrate Judge
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed:<br>12/30/2016 10:00 am | Copy of warrant and inventory left with:<br>Nicholas Wood |

Inventory made in the presence of :
Nicholas Wood

Inventory of the property taken and name of any person(s) seized:

iOmega LPHD-UP3 External Hard Drive S/N GSAB1322DA

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 1/10/17

_Executing officer's signature_

Velice BetSayad, Special Agent

_Printed name and title_

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of California

**FILED**

JAN 10 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   7: 1 6 SW   0 0 3 4 6 ---- SAB |
| Kingston 16GB Micro SD card located at 19777 Greenley Rd., Sonora, California 95370 | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the          Eastern          District of          California          *(identify the person or describe the property to be searched and give its location)*:

See Attachment A - attached hereto and incorporated herein.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B - attached hereto and incorporated herein.

**YOU ARE COMMANDED** to execute this warrant on or before      January 10, 2017      *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____     Any duty Magistrate Judge
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   **12:12 PM, Dec 28, 2016**     _____
                                                                                     *Judge's signature*

City and state:        Fresno, California                     Stanley A. Boone, Hon. United States Magistrate Judge
                                                                                     *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed:<br>12/30/2016 10:00 am | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |

Inventory of the property taken and name of any person(s) seized:

Kingston 16 GB Micro SD Card was not located at 19777 Greenley Road., Sonora CA 95370

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  1/10/17

_____
*Executing officer's signature*

Velice BetSayad, Special Agent
_____
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the
### Eastern District of California

SEALED

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with<br>WHITEWITNESSMARKS@GMAIL.COM stored at<br>premises controlled by Google, Inc. | )<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>**7: 1 7 SW   0 0 0 5 2   BAM** |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.  This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A).

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____March 13, 2017_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Barbara A. McAuliffe_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____

Date and time issued:      3/1/17  10:36 a.m.

*Judge's signature*

City and state:      Fresno, CA                                   Hon. Barbara A. McAuliffe
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with whitewitnessmarks@gmail.com

(hereinafter "the account") that is stored at premises owned, maintained, controlled, or operated

by Google, Inc., a company headquartered at 1600 Amphitheater Parkway, Mountain View,

California, 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information, including contents, images, videos, chats, search/access history and other records, associated with the account's use of the following Google services: Blogger, Gmail, Google Hangouts, Google Photos, Google+, Google Profile, Plusone, Web & App Activity, YouTube;

c.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

d. The types of service utilized;

e. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

f. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

g. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), and 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), those violations involving Chad M. Lilly and occurring after May 1, 2014, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

     (a) receipt and distribution of, conspiracy to receive and distribute, and attempt to receive and distribute child pornography;

     (b) evidence indicating how and when whitewitnessmarks@gmail.com was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

     (c) the identity of the person(s) who created or used whitewitnessmarks@gmail.com, including records that help reveal their whereabouts;

     (d) the identity of the person(s) who communicated with the person(s) who created or used whitewitnessmarks@gmail.com about matters relating to child pornography and/or sex with children, including records that help reveal their whereabouts; and

     (e) All of the records and information described above in Section I(c).

3